## NIGRO v. HOBBY.
### Civ. No. 55-53.

United States District Court
D. Nebraska, Omaha Division.
March 30, 1954.

I. H. Floersch, Omaha, Neb., for plaintiff.

Donald R. Ross, U. S. Atty, Omaha, Neb., for defendant.

DONOHOE, Chief Judge.

This action is an appeal from a decision by the Appeals Council of the Federal Security Agency, acting for and on behalf of the Federal Security Administrator, under the provisions of Section 205(g) of the Social Security Act, as amended. 42 U.S.C.A. § 405(g).

On July 7, 1952, a hearing on the claim which is the subject of this action was held in Omaha, Nebraska, before Myers.

D. Campbell, a duly appointed, qualified and acting Referee of the Federal Security Agency. On December 3, 1952, said Referee entered a decision denying the plaintiff's claim. On December 13, 1952, plaintiff requested a review of the Referee's decision by the Appeals Council of the Federal Security Agency, and on March 23, 1953, the Appeals Council of the Federal Security Agency entered a decision affirming the decision of the Referee, denying the claim of the plaintiff. Plaintiff filed this action in United States District Court on May 14, 1953, and defendant filed her answer and motion for judgment on July 7, 1953. No ruling has been had on defendant's motion for judgment.

The Administrator (now Secretary) made findings of fact which are substantially as follows:

Giuseppe Finocchiaro (hereinafter referred to as "wage earner") was born in Italy, December 28, 1876, and immigrated to the United States in 1906. He settled in Omaha, Nebraska, and in 1913 he brought his first wife and three children to live with him in that city. In 1934 his wife died and on August 30, 1935, he married his first wife's sister, Lucia Innao. From the time of his immigration, the wage earner resided in Omaha and at all times, until his retirement in July, 1943, was employed as a laborer and track cleaner by the Omaha and Council Bluffs Street Railway Company. In July, 1943, he filed an application for primary insurance benefits under section 202(a) of the Social Security Act, 42 U.S.C.A. § 402(a), and was subsequently awarded a benefit of $27.20 a month effective with the month of July, 1943, and received such payments through November, 1943.

The wage earner disappeared from his home on December 28, 1943, under rather unusual circumstances. At the time of his disappearance he was clad in a mackinaw and overalls and carried a rosary with him. He left the remainder of his clothing and personal effects at his home. At the time of his disappearance, the wage earner was not in any financial difficulty. He had a regular monthly rental income from five properties and from a small farm which he owned. In addition, he was receiving a pension from his former employer and a social security benefit of $27.20.

There is evidence in the record of friction between his wife and the plaintiff, the wage earner's daughter, resulting from a feeling on the daughter's part that the wage earner was spending more on his second wife than he did upon his first wife, the mother of the plaintiff. However, the record indicates that the wage earner's relationship with his children was very satisfactory, and that he and his children were on terms of affection. It seems that the wage earner's house was across the street from that of the plaintiff and that he made daily visits to her home. Furthermore, the wage earner had apparently assisted his two sons in obtaining professional educations; one of them had become a lawyer and the other a physician. It also appears that although the sons did not visit the father frequently, they corresponded regularly and that the wage earner was extremely fond of them.

The plaintiff and her husband, the wage earner's son-in-law, testified that the wage earner was in good health and in good spirits and that he did not have a suicidal state of mind, inasmuch as he was a devout member of the Catholic Church which is opposed to suicide. These contentions, however, are contradicted by other evidence in the record. In a statement made by Dr. Cirino Finocchiaro, the wage earner's son, who visited his father in December, 1943, within a month of the wage earner's disappearance, the doctor said:

"Prior to that time I had not seen my father for a period of several years. At that time he appeared to have aged considerably and had lost many pounds in weight. He, apparently, had been very unhappy because of family squabbles. Although he had always been a pious and religious man, he wished his life would come to an end."

Mr. James A. Nanfito, an attorney who was appointed by the County Court, Douglas County, Nebraska, to represent the "absentee" wage earner and his heirs in proceedings begun in 1951 to declare the wage earner dead and to probate his will, stated, after investigation:

"Conversations and conferences with a few Street Car Company fellow employees have confirmed that Giuseppe's health and mental condition had undergone a considerable change from the date of his retirement in July, 1943, to December, 1943, for the worse."

When the wage earner's daughter was first informed of her father's disappearance she was told by her cousin (the wage earner's nephew), that her father "was missing and he'd run and jumped in the river". Apparently, the Missouri River flows in the vicinity of the deceased's house.

On November 17, 1948, the wage earner's wife, Lucia Finocchiaro, filed application for wife's insurance benefits, and was awarded a monthly benefit of $13.60, effective October, 1948. As of that time the Social Security Administration had insufficient evidence of the wage earner's death, and since less than seven years had elapsed since his disappearance, his death could not, at that time, have been presumed. Accordingly, in the award certificate issued to Mrs. Finocchiaro on January 26, 1949, it was stated:

"From the evidence we have in this case, we cannot presume that your husband is deceased."

Mrs. Finocchiaro died September 5, 1950.

On January 22, 1951, the wage earner's will (dated January 3, 1939) was filed in said county court, and on March 10, 1951, James A. Nanfito, referred to above, was appointed by said court to represent "the absentee, Giuseppe Finocchiaro (the wage earner), and any and all heirs of said absentee * * *". On May 21, 1951, Mr. Nanfito filed his preliminary report, and on June 13, 1951, his final report, in which he concluded:

"That Giuseppe Finocchiaro disappeared from his home at 311 Woolworth Avenue in the City of Omaha, Douglas County, Nebraska, on December 28, 1943, and has never been seen or heard of since that date. The exact cause of the absence of Giuseppe Finocchiaro cannot be determined and is unknown."

On July 3, 1951, the aforesaid county court signed a form "decree of probate of domestic will," in which it found that the wage earner died December 28, 1950, seven years from the date of his disappearance, admitted his will to probate and appointed his daughter, the plaintiff, administratrix with the will annexed.

On October 27, 1951, the plaintiff filed a claim for the monthly benefits which would have been payable to the wage earner from December, 1943, through November, 1950, if he lived until December, 1950. The Bureau of Old-Age and Survivors Insurance, Social Security Administration, Federal Security Agency (now Department of Health, Education, and Welfare) found that the wage earner died at the time of his disappearance, December 28, 1943, and disallowed the claim.

Plaintiff requested and obtained a hearing before a referee of the Social Security Administration. The referee on December 3, 1952, issued his decision, in which he found that the wage earner died on December 28, 1943, and that since the wage earner had received his benefits through November, 1943, no additional payments were due. The plaintiff thereupon requested a review of the referee's decision by the Appeals Council, and on March 23, 1953, the Appeals Council issued its decision, wherein it, too, found that the wage earner died on or about December 28, 1943, the date of his disappearance, and affirmed the decision of the referee. The decision of the Appeals Council constitutes the "final decision of the Administrator", within the meaning of Section 205(g) of the Act, 42 U.S.C.A. § 405(g).

Section 205(g) of the Social Security Act, 42 U.S.C.A. § 405(g), provides in part:

"The findings of the Administrator as to any fact, if supported by substantial evidence, shall be conclusive".

The court has examined carefully the record filed by the administrator in keeping with 42 U.S.C.A. § 405(g) and finds that all the basic facts found by the administrator are supported by substantial evidence. In addition to this all inferences and conclusions from the basic facts made by the administrator are reasonable and have a substantial basis in the record. This being so, the court is constrained to accept the administrator's findings as conclusive. United States (Social Security Board) v. La Lone, 9 Cir., 152 F.2d 43.

It should be mentioned that the only finding seriously attacked by the plaintiff is the finding that the wage earner, Giuseppe Finocchiaro, died on or about December 28, 1943, the date of his disappearance. Plaintiff argues that this finding is erroneous for two reasons: 1) It is contrary to the finding that the wage earner died December 28, 1950, contained in the decree of probate in the county court of Douglas County, Nebraska, in the Estate of Giuseppe Finocchiaro, Book 63, Page 85; and 2) there is a presumption that the decedent did not die until seven years after the date of his death. Neither reason is well taken.

■ 1. The finding of the probate court does not under the principles of res judicata nor the principles of collateral estoppel prevent the issue of the time of the decedent's death from being considered and determined by the administrator in this action. The Federal Security Administrator was not a party to the Nebaska probate proceedings and the money sought to be recovered in this action was not part of the res over which the probate court exercised jurisdiction. The probate decree is, therefore, not controlling in this case. See 3 Freeman on Judgments (5th Ed.1925), Sec. 1537, p. 3153; 50 C.J.S., Judgments, § 820, page 375; Fennell v. United States, 5 Cir., 1933, 67 F.2d 768; Jacobs v. United States, 5 Cir., 1940, 112 F.2d 51; Ramsey v. United States, 5 Cir., 1932, 61 F. 2d 444.

■ 2. The presumption of death arising upon proof that a person has been unexplainedly absent from his residence and unheard of for seven years, 20 C.F.R. (1949 Ed.) 404, is, by the weight of authority a presumption of death alone and not a presumption as to the time of death. IX Wigmore on Evidence (3d Ed.), Sec. 2531a, p. 469, note 2.[1] Though there may be a presumption that the life of an absentee continues for seven years, there is sufficient circumstantial evidence in this case to overcome the presumption. Cf. Munson v. New England Mutual Life Ins. Co., 126 Neb. 775, 254 N.W. 496.

■ The circumstantial evidence in the record is sufficient to support the finding of the Federal Security Administrator that the wage earner died December 28, 1943. The decision of the Appeals Council issued March 23, 1953, should be affirmed.

The United States Attorney shall prepare and submit for approval the appropriate judgment to be entered in accordance with this memorandum.

[1]. As to what law controls in the application of presumptions by Federal Courts see 8 Cyclopedia of Federal Procedure (3d Ed.) Sec. 26.267, p. 314. The court is of the opinion that whether federal law or the law of Nebraska is applied, the same result would be reached.