Annie Mae Jones **MINCEY**, Plaintiff,

v.

Anthony J. **CELEBREZZE**, Secretary of Health, Education, and Welfare, Defendant.

Civ. A. No. 4335.

United States District Court
W. D. South Carolina,
Rock Hill Division.

Oct. 14, 1965.

Melvin L. Roberts, York, S. C., for plaintiff.

John C. Williams, U. S. Atty., Greenville, S. C., and Geddes Hugh Martin, Asst. U. S. Atty., Greenville, S. C., for defendant.

HEMPHILL, District Judge.

Action brought under section 205(g) of the Social Security Act (hereinafter referred to as the Act), 42 U.S.C. § 405(g), to review a final decision of the Secretary of Health, Education, and Welfare. Jurisdiction of this Court and the scope of its review in such an action is defined in section 205(g) and (h), 42 U.S.C. § 405(g) and (h). Section 205(g) provides *inter alia*, that "As part of his answer the Secretary shall file a certified copy of the transcript of the record including the evidence upon which the findings and decision complained of are based," and that "The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for a rehearing." It further provides "The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive."

On May 18, 1960, Annie Mae Jones (Mincey), plaintiff herein, filed application for social security insurance benefits on the earnings account of Sephis Mincey, hereinafter referred to as the deceased wage earner, who had died on March 5, 1960, as the result of an automobile accident. In that application the plaintiff alleged that she and the de-

ceased wage earner had been married in a common-law relationship since March 1947 and that there were three children of that marriage surviving the deceased wage earner. (A fourth child Sephis Jr., had also been killed in the accident). She also stated that the deceased wage earner had been married previously but she did not know to whom, when, where, nor how that marriage had been terminated. In an attempt to further clarify her marital status, she told Administration officials in a statement signed by her on May 18, 1960, that the deceased wage earner had been married twice before. His first marriage, which had apparently taken place in Georgia, had terminated with his wife's death. He had then married Sarah McLeod (also spelled variously throughout the evidence of record as McCloud and McLeoud) on February 3, 1945, but that he had "quit her March 3, 1945." According to plaintiff, however, the deceased wage earner never mentioned to her that he had ever divorced Sarah and the plaintiff herself was unaware of Sarah's whereabouts or even if she was still living.

On August 20, 1960, plaintiff was notified that her claim for benefits had been denied because she was not the deceased wage earner's widow and the children did not have the relationship to the deceased wage earner of children as those two terms are defined by the Social Security Act. This denial was affirmed upon reconsideration and plaintiff was so notified on December 21, 1960. Plaintiff then presented to the Administration, two orders dated October 15, 1960, issuing out of the Court of Common Pleas for York County, South Carolina, in which she had been designated as Administratrix of the deceased wage earner's estate. She presented these orders apparently for the purpose of showing that these court orders would prove that she was the widow of the deceased wage earner. By letter of February 2, 1961, the plaintiff was informed by the Secretary that such evidence in no way changed the determination of December 21, 1960.

Plaintiff then requested, on December 20, 1961, through her committee, a hearing before a hearing examiner of the Bureau of Hearings and Appeals and such hearing was held on August 23, 1962, in Rock Hill, South Carolina. Plaintiff herself was not present at the hearing, but Foy W. Dickson, her attorney, and Melvin L. Roberts, her committee, were present and gave testimony. The decision of the hearing examiner issued on January 28, 1963, affirmed the earlier administrative decisions. Having exhausted her administrative remedies, plaintiff commenced action for the judicial review on May 7, 1963.

Prior to filing answer, defendant Secretary moved for remand pursuant to section 205(g), 42 U.S.C. § 405(g), based on his belief that there was available further evidence which would better unravel the rather tangled marital histories of the principals in this case and by court order of July 1, 1963, that motion was granted. The Secretary then undertook a further investigation.

At plaintiff's committee's request, a supplemental hearing was then held on September 23, 1964, in Rock Hill, South Carolina, before the hearing examiner to whom the case had been assigned by the Appeals Council following the remand. An offer had been made by the hearing examiner to hold the hearing in Georgia so as to afford plaintiff a chance to subpoena certain individuals and documents and to examine certain individuals who had given contradictory written statements at different times to both plaintiff's attorney and officials of the Administration, but plaintiff's committee had decided that the expense involved would be prohibitive. Again plaintiff did not testify, nor was she present. As Mr. Dickson had died shortly before the hearing was scheduled, Mr. Roberts alone appeared on behalf of the plaintiff stating that as he was an attorney and had firsthand knowledge of the case from the beginning, he believed he could competently represent the plaintiff at the hearing. Mr. Roberts' wife was also called as a witness.

On September 30, 1964, the hearing examiner issued his recommended decision in which he found: (1) that a valid marriage existed between Sephis Mincey, the deceased wage earner, and Sarah McLeod, at the time of the deceased wage earner's death; (2) that the deceased wage earner was legally incapable of entering into a valid common-law marriage with the plaintiff at or subsequent to the time such marriage was alleged by plaintiff to have taken place and prior to his death; (3) that plaintiff was not the widow and the three children were not the children of the deceased wage earner for purposes of entitlement to benefits under the Act; (4) plaintiff was not entitled to any benefits based on the earnings account of the deceased wage earner for which she made application. This decision became the final decision of the Secretary when it was affirmed in its entirety by the Appeals Council on December 28, 1964, and of which plaintiff was notified.

 Of course, the only issue is whether or not the Secretary's decision is supported by substantial evidence. Substantial evidence is a *sine qua non* of the Secretary's decision. It must be more than a mere scintilla. It must do more than create a suspicion of the facts alleged established. In other words, the evidence must rationally support the decision, taking into account the truism that different minds, with identical facts presented, can reasonably arrive at different conclusions thereon. Administrative agencies are not the place for attenuated reasoning, though their reasoning does not necessarily have to convince the most naive and unsophisticated of our citizenry. See Universal Camera Corp. v. N.L.R.B., 340 U.S. 474, 488, 71 S.Ct. 456, 95 L.Ed. 456.

It appears beyond peradventure that the couple lived together with other acquaintances for varying periods of time "without benefit of clergy."

In pointing out that the Secretary is not bound by the decree of the Court of Common Pleas for York County, South Carolina, which holds plaintiff to be the legal wife and widow of the deceased wage earner, government's counsel says:

It is the argument of the plaintiff that the decree issued by the Court of Common Pleas for York County, South Carolina, on August 18, 1962, holding her to be the legal wife and widow by virtue of a valid common law marriage is binding upon the Secretary and in light of that decree she should be found entitled to benefits. This argument is without merit.

In the action plaintiff brought in the Court of Common Pleas, the Referee had before him on the testimony of Mr. Roberts, plaintiff's committee, and the statement purportedly given to him by Meadie Phillips in October 1961. On the basis of the answers of Mr. Roberts and Meadie Phillips' alleged statement the Referee issued his report which was adopted and decreed by the court. There was lacking, therefore, all of the evidence in this entangled case that was obtained and made a part of the record by the Social Security Administration—evidence which unmistakably establishes that the deceased wage earner and Sarah McCloud contracted a valid ceremonial marriage on February 3, 1945, which was never dissolved until his death in March 1960 and that the common law marriage alleged by the plaintiff was therefore void.

It will be noted that although Mr. Roberts took statements from Clara Phillips and Ross Durden at the same time he took the statement from Meadie Phillips, he did not admit them as evidence before the Referee so that he might weigh and assess the conflicting statements therein contained. Nor did Mr. Roberts take a statement from Julia Williams although he discussed the matter with her and she later gave a statement to officials of the Social Security Administration which contradicted in its entirety the state-

ment obtained from Meadie Phillips. Nor did he attempt to locate and obtain a statement from Sarah McCloud. Moreover, it should also appear quite clear that the alleged statement given to Roberts by Meadie, when analyzed in the light cast by the remainder of the record, contains some obvious discrepancies, and that if the name Maggie Beasley is inserted in place of Sarah McCloud, the remainder of his statement is very much in accord with the statements made by the other principals in the case.

In view of the limited investigation conducted by plaintiff, her failure to obtain material evidence easily available, and her failure to present to the court all of the evidence she did obtain, she was, of course, able to obtain a favorable report from the Referee and a decree by the Court of Common Pleas accepting and adopting such report declaring her to be the legal wife and widow of the deceased wage earner.

It is clear that the Secretary is not absolutely bound by the State Court decision, particularly when he was not made a party. Brown v. Wright, 137 F.2d 484, 487 (4th Cir. 1943); Miller v. Ribicoff, 198 F.Supp. 819, 821 (E.D. Mich. 1961); Nigro v. Hobby, 120 F. Supp. 16, 19 (D.Neb.1954). Nevertheless, the sanctity of a State Court's determination of the efficacy of a marriage would seem to be somewhat greater than, perhaps a State's determination of "disability," or some other feature which might tend to dovetail with some aspect of the Social Security law. Marriage is a sacred and noble institution, and is recognized as such. Griswold v. State of Connecticut, 381 U.S. 479, 486, 85 S.Ct. 1678, 14 L.Ed.2d 510.

This Court is loath to disturb or attempt to give weight to any activity which impunges upon an able Court of record in South Carolina. The government contends that the State Court made the only determination possible with the facts before it, but alleges there are considerable facts not presented in what was alleged to be essentially an ex parte proceeding.

Without proceeding further, it appears that the proper thing to do is to remand this matter to the Secretary for a period of ninety days, during which time, if he is so advised, he might enter an appearance in the Court of Common Pleas for York County to attempt to reopen the judgment which in substance is one against him for funds in his keeping. For it may well be that the Secretary is entitled to relief under South Carolina law. See Bank of Columbia v. Havird Co., 99 S.C. 110, 82 S.E. 1006; Ex parte Carroll, 17 S.C. 446; Ex parte Gray, 48 S.C. 556, 26 S.E. 786; Cf. § 10–1213, S.C. Code, 1962; Brown v. Wright, supra.

During the aforesaid ninety day period, and thereafter if necessary, this Court will retain jurisdiction to decide the controversy on the record before it, and should the Secretary not see fit to attempt to proceed in the State Court, then plaintiff is granted leave to renew her Motion for Summary Judgment.

The Clerk will make the appropriate entry.

And it is so ordered.