**Gwen S. OSSERMAN, Plaintiff,**

v.

**John W. GARDNER, Secretary of Health, Education and Welfare, Defendant.**

**No. 65 Civ. 2971.**

United States District Court
S. D. New York.
Oct. 10, 1966.

Warren Schwartz, New York City, for plaintiff.

Robert Morgenthau, U. S. Atty., by Judith N. Stein, Asst. U. S. Atty., for defendant.

## OPINION

TYLER, District Judge.

On February 24, 1964, Mrs. Gwen S. Osserman ("claimant") filed an applica-

tion for disability insurance benefits under the provisions of the Social Security Act, as amended.[1] In fixing the benefit rate, the Bureau of Old Age & Survivors Insurance of the Social Security Administration did not give credit for certain earnings received by the claimant during the period from September 6, 1957, through September 9, 1960, for services performed by her as a regular school teacher member ·of the New York City Teachers' Retirement System. On appeal from this determination, a Hearing Examiner of the Social Security Administration, after a hearing, found that the claimant's services for the period in question did not constitute "employment" within the context of the Social Security Act.[2]

Upon request of claimant, the Appeals Council reviewed the findings of the Hearing Examiner and affirmed his decision. Under these circumstances the decision of the Appeals Council is the final decision of the Secretary of Health, Education and Welfare for the purposes of judicial review. 42 U.S.C.A. § 405 (g); Pirone v. Flemming, 183 F.Supp. 739 (S.D.N.Y.1959), aff'd, 278 F.2d 508 (2d Cir. 1960).

Following the exhaustion of her administrative remedies, Mrs. Osserman instituted an action under Section 205(g) of the Act[3] in this court to obtain a review of the Secretary's decision. As provided by the Act, and as a part of his answer, the Secretary filed a certified copy of the transcript of the record, in-

---

1. 42 U.S.C.A. §§ 301–427.

2. Section 210(a) of the Social Security Act, 42 U.S.C.A. § 410(a), provides in pertinent part,
   "The term 'employment' means any service * * * performed after 1950 * * * (A) by an employee for the person employing him * * * except that, in the case of service performed after 1950, such term shall not include * * *
   (7) Service performed in the employ of a State, or any political subdivision thereof, or any instrumentality of any one or more of the foregoing which is wholly owned thereby, except that this paragraph shall not apply in the case of * * *

   (A) service included under an agreement under section 218 * * *."
   Section 218(a) (1) of the Act, 42 U.S.C.A. § 418(a) (1), provides as follows:
   "The Secretary of Health, Education, and Welfare shall, at the request of any State, enter into an agreement with such State for the purpose of extending the insurance system established by this subchapter to services performed by individuals as employees of such State or any political subdivision thereof. Each such agreement shall contain such provisions, not inconsistent with the provisions of this section, as the State may request."

3. 42 U.S.C.A. § 405(g).

cluding the evidence upon which the findings and decision complained of were based. On the basis of the complaint, answer, and administrative record, both parties have moved for summary judgment.

The basic facts, as found by the Hearing Examiner, are simple and undisputed. On September 6, 1957, Gwen Osserman began employment as a regular teacher in the New York City public school system. On the same day, all regular teachers in the system were handed a "Social Security Application Form" on which they were to indicate whether or not they desired to be covered by Federal Social Security.

A two-step procedure as prescribed by the Act at that time was followed by New York State in order for individual teachers to be covered by the Social Security Act. Upon completion of their application forms, the teachers were divided into two retirement systems, one of which contained those desiring Social Security "coverage" and the other of which embraced those who did not.[4] Then, after notice of at least ninety days, those in the "covered" retirement system participated in a referendum to indicate whether or not they wanted the system itself to be covered.[5] This, of course, amounted to a *pro forma* election in that those voting had already indicated they wanted coverage. Parenthetically, it should be noted that a 1957 amendment to the Act[6] abolished the necessity of this two-step process.[7] However, there is no issue as to the propriety of the procedure followed in this case.

On September 6, Mrs. Osserman elected not to join the covered retirement system and indicated this negative decision upon her application form. Accordingly, she was placed in the non-covered system.

The required referendum was then scheduled for December 10, 1957. Shortly before that time, Mrs. Osserman changed her mind and decided that she did want to be covered. She thereupon filled out a new application in which she indicated her desire for coverage. The completed new application was delivered to the clerk of Public School No. 72, the school to which she had been assigned.[8] From just prior to December 10, 1957, and into the year 1961, Mrs. Osserman believed that she was covered by the Social Security Act. Moreover, she never received any notice to the contrary.

In 1958, the Social Security Act was amended to allow members of non-covered retirement systems to be covered by the Act.[9] Accordingly, the New York City Board of Education extended a "second chance" for coverage to those eligible in June, 1959 and December, 1959. Notices of these "second chances" were supposedly given to all teachers in the non-covered system.

During the period when the "second chances" were offered, Mrs. Osserman was on maternity leave. She was still a member of the school system, however, and thus was eligible to receive notices of the "second chances" if she were considered not covered. The Hearing Examiner found that no such notices were ever sent.

In April, 1961, Mrs. Osserman entered a claim for benefits for the period under discussion. The claim was denied. The administrative proceedings already outlined followed.

---

4. Division of the teachers into two retirement groups was authorized by Section 218(d) (1) of the Act then in effect. Act of Aug. 1, 1956, ch. 836, tit. I, § 104 (e), 70 Stat. 825.

5. The requirement of the referendum was imposed by § 218(d) (3) of the Act then in effect. Social Security Amendments of 1954, ch. 1206, tit. I, § 101(h) (3), 68 Stat. 1056.

6. Act of Aug. 30, 1957, ch. 229, 71 Stat. 513.

7. S.Rep. No. 860, 85th Cong., 1st Sess. 1957, U.S.Code Cong. & Admin.News 1957, p. 1754.

8. Although this second form was never located, the Hearing Examiner found that it had been executed and submitted.

9. Social Security Amendments of 1958, ch. 840, § 315, 72 Stat. 1013.

The Hearing Examiner's decision was two-pronged. First, he held that, on the basis of the evidence presented,

"the delivery by the claimant in November or December 1957 to the school clerk of what, in essence, was a written request for transfer to the deemed separate retirement system composed of positions of members of the retirement system who desired coverage, was an act of no effect, in relation to obtaining social security coverage, in the absence of authority, *at the time,* permitting an expression of a change of desire by those who had previously rejected coverage." (Record, pp. 13–14)

Second, it was held that

"there is no authority for concluding that the failure to give the claimant reasonable notice of the 'second chance' opportunities of June 1959 and December 1959 resulted in effecting a transfer of her position to the deemed 'yes' separate retirement system. Under section 218 [of the Social Security Act] such transfer could be accomplished only by the valid filing with the State of New York of a written request for such transfer. (Record, p. 15)

In effect, then, the administrative authorities have ruled against Mrs. Osserman notwithstanding express findings that not only did she honestly believe that she was covered by Social Security during the period under discussion, but also that she was deprived of any notice to the contrary. The federal courts have said, however, that the Social Security Act is essentially remedial in character and should be "liberally construed as an aid to achievement of congressional purposes and objectives, and narrow technicalities which proscribe or thwart its policies and purposes are not to be adopted."

Ketcherside v. Celebrezze, 209 F.Supp. 226 (D.Kan.1962).[10] Moreover, the Court of Appeals in this circuit has ruled that a claimant will not be denied Social Security benefits "where the applicant has raised a serious question and the evidence affords no sufficient basis for the Secretary's negative answer." Kerner v. Flemming, 283 F.2d 916, 922 (2d Cir. 1960). In my view, there is a serious question whether the administrative ruling here squares with these judicial rulings.

Resolution of this legal question on the present record would be inappropriate, however, in the light of my determination that available and significant evidence was not adduced before the Examiner and my conclusion that claimant should be given the opportunity, which was previously denied her, to present such evidence. Mrs. Osserman has earnestly contended that her switch from the non-covered to the covered retirement system in late November or early December 1957 should be adjudged efficacious; the Hearing Examiner, as noted, found it "an act of no effect * * * *at the time.* * * *." The statute is unspecific as to whether a change in status such as that executed by Mrs. Osserman was appropriate and permissible. The Hearing Examiner appears to have held that, in the absence of specific statutory authorization for an individual to switch, no change could be made. The Examiner did not refer to any specific portion of the Social Security Act in support of his position. He did point, however, to subdivisions nine and sixteen of section 138–a of the New York Retirement and Social Security Law, McKinney's Consol.Laws, c. 51–A as supporting his finding.[11] Yet, as I read them, neither subdivision is in any way dispositive of the issue at

**10.** This proposition is often affirmatively stated to the effect that the courts should liberally construe the Act in favor of the party seeking its benefits and will grant relief if there is any basis in law for so doing. See, e. g., Lietz v. Flemming, 264 F.2d 311, 313 (6th Cir. 1959); Carroll v. Social Security Bd., 128 F.2d 876, 881 (7th Cir. 1942).

**11.** Subdivision 9 states as follows:

"In the event that a referendum among eligible employees of the state or of one or more political subdivisions favors the extension of old-age and survivors insurance coverage to positions covered by a retirement system or plan of which they are members, persons who are members of such system or plan as of the refer-

hand. Each requires the individual desiring coverage to comply with various rules and regulations to be promulgated by the director. The record is silent as to whether such were promulgated and, if so, what they provided.

Furthermore, the Examiner's report contains a copy of a letter written by Gerald A. Kilcourse to the Social Security Administration on May 4, 1965. Mr. Kilcourse was employed as a Supervisor by the Board of Education in 1957 and, in his own words, was "fully conversant with the Rules and Regulations pertaining to the election for Social Security". Record, p. 15. In commenting about the controversy, at hand, Mr. Kilcourse states:

"In the event a retirement system member had not elected to accept coverage under Social Security by September 10, they were still eligible to reverse their first selection by notifying the Bureau of Finance of the Board of Education in writing on or before December 10, the day of the referendum, that they wished to be covered by Social Security. Such persons were not eligible to vote in the election but were bound by the majority of eligible voters in the election notwithstanding the fact that they were ineligible to vote in such referendum." (Record, p. 15)

This assertion clearly supports claimant's position; however, the Hearing Examiner apparently gave the contents of the letter little weight, for in his report he mentions the letter only to show that "there was some confusion as to the procedure to be followed in the 1957 retirement system division and the December 1957 referendum." Record, p. 14. Moreover, the letter was written after the administrative hearing on this matter on April 28, 1965. As a result, claimant was deprived of the opportunity to substantiate the assertion made by Mr. Kilcourse through the examination of witnesses or the introduction of documentary evidence.[12]

Section 205(g) of the Social Security Act[13] provides that the reviewing court "may, at any time, on good cause shown, order additional evidence to be taken before the Secretary * * *." Because of the lack of specific evidence supporting the Examiner's finding that Mrs. Osserman could not efficaciously change her position in the fall of 1957 and in view of the need for further investigation of the ramifications of Mr. Kilcourse's letter, I am constrained to remand this case so that additional evidence may be taken before the Hearing Examiner, who presumably may then reconsider his findings and conclusions in the light of this opinion.

Settle order accordingly.

---

endum date shall be given such coverage only if they indicated their desire therefor, prior to the applicable referendum, in such manner and on or before such date as the director shall specify by rule or regulation consistent with the federal social security act."

Subdivision 16 states as follows:

"Notwithstanding anything to the contrary contained in subdivision nine of this section, the director is hereby authorized, on behalf of the state, consistent with the provisions of the federal social security act, to modify the agreement with the federal secretary for the purpose of extending old age and survivors insurance coverage to positions of members of the division or part of a retirement system composed of members who do not desire coverage, if in the manner and before the date specified by the director, the individuals occupying such positions, file with him a written request therefor."

12. The record, pp. 78–79, shows that claimant's attorney unsuccessfully tried to subpoena some records which might have had a bearing on this point. The Hearing Examiner refused to issue the subpoena because claimant did not have a "sufficient basis" for requesting the documents.

13. 42 U.S.C.A. § 405(g).