Otis C. SNELL, Jr.

v.

**SECRETARY OF HEALTH, EDUCA-
TION & WELFARE.**

Civ. A. No. 16096.

United States District Court
E. D. Louisiana,
New Orleans Division.

Nov. 1, 1967.

Allen B. Pierson, Jr., Pierson & Pierson, Ponchatoula, La., for plaintiff.

Frederick W. Veters, Asst. U. S. Atty., New Orleans, La., for defendant.

HEEBE, District Judge:

Plaintiff here seeks judicial review pursuant to §§ 205(c) (8) and 205(g) of the Social Security Act, 42 U.S.C. §§ 405(c) (8), 405(g), of a final decision of the defendant denying the inclusion of certain sums in plaintiff's social security account.

Mr. Snell began driving a school bus owned by the Ponchatoula Elementary School, located in Tangipahoa Parish, Louisiana, in January of 1960 when he was 58 years old. In 1964 he was notified that the pay he received for these services from 1960 through 1963 would not be credited to his social security account because the coverage of the Social Security Act did not extend to him in the performance of these services. Snell sought a hearing and the hearing examiner concluded that Snell's position as a bus driver for the Ponchatoula Elementary School was covered by the Louisiana retirement system and his services were therefore not covered under § 218 of the Social Security Act, 42 U.S.C. § 418. The hearing examiner's decision was up-

held by the Appeals Council and this suit was brought. We reverse.

It is helpful to trace the development of the pertinent provisions of the Social Security Act to their present status for a full understanding of the simple issue presented in this case. The Act, as originally passed in 1935, expressly excluded from coverage:

"Service performed in the employ of a State, a political subdivision thereof, or an instrumentality of one or more States or political subdivisions. * *." Ch. 531, § 210(b) (6), 49 Stat. 625.

This exclusion was necessary to avoid the constitutional difficulties which would have arisen if the social security taxes paid by the employer were levied upon a state. However, the 1950 amendment to the Social Security Act authorized the Federal Security Administrator (now the Secretary of Health, Education, and Welfare) to enter into voluntary agreements with the states for the purpose of including state employees in the social security system. Thus, former § 210(b) (6) of the Social Security Act, *supra*, now § 210(a) (7) of the Act, 42 U.S.C. § 410(a) (7), still excludes from coverage service performed by state employees, but it now provides that this exclusion does not apply to "service included under an agreement under section 418 of this title." Section 418 of Title 42 now provides in pertinent part:

"(a) (1) The Secretary of Health, Education, and Welfare shall, at the request of any State, enter into an agreement with such State for the purpose of extending the insurance system established by this subchapter to services performed by individuals as employees of such State or any political subdivision thereof. Each such agreement shall contain such provisions, not inconsistent with the provisions of this section, as the State may request.

"(2) Notwithstanding section 410(a) of this title, for the purposes of this subchapter the term 'employment' includes any service included under an

agreement entered into under this section."

However, the scope of coverage which such voluntary agreements may afford state employees is limited by subsection (d) (1) of § 418 which provides:

"No agreement with any State may be made applicable (either in the original agreement or by any modification thereof) to any service performed by employees as members of any coverage group in positions covered by a retirement system * * * on the date such agreement is made applicable to such coverage group * * *."

Thus, in 1950 no state employee who was employed in a position covered by a state retirement system was eligible for social security coverage under a state-federal agreement.

Pursuant to the amended federal law, the State of Louisiana entered into an agreement with the Federal Security Administrator on December 10, 1952,

"to extend * * * the insurance system established by Title II of the Social Security Act as such Act has been and may from time to time be amended, to services performed by individuals as employees of the State of Louisiana, and as employees of any political subdivision of the State listed in the appendix attached hereto and made a part hereof, except services expressly excluded from this agreement."

Section (B) of the agreement provides:

"This agreement includes all services performed by individuals as employees of the State and as employees of those political subdivisions listed in the appendix attached hereto, except:

"(1) Service, which under applicable Federal law, must not be included in an agreement between the State and the Federal Security Administrator, including—

* * * * * *

"(d) Any service performed by an employee in a position which. * * is covered by a retirement system."

In 1954, § 418(d) (1) of Title 42, *supra*, was amended, and while it still denies social security coverage to state employees in positions covered by a retirement system, it now provides that this

"shall not be applicable to any service performed by an employee as a member of any coverage group in a position * * * covered by a retirement system * * * if * * * such individual is ineligible to be a member of such system."

Thus, even though a state employee occupies a *position covered* by a state retirement system, he may now be eligible for social security coverage under a state-federal agreement if he is *personally ineligible* for membership in the rement system. As Snell is personally ineligible for membership in the state system due to his age when hired,[1] it would seem that he qualifies for social security coverage under this provision. However, 42 U.S.C. § 418(c) (3) (C), which was part of the 1954 amendment, provides that employees who are personally ineligible for membership in the state retirement system may still be excluded from social security coverage at the state's "request" in the state-federal agreement. In the original 1952 agreement, *supra*, the state excluded from social security coverage thereunder all state employees in positions covered by the state retirement system. This provision in the agreement constitutes a "request" to exclude state employees who are personally ineligible for membership in the state system, even though the agreement does not specifically mention such persons, as they are within the class of employees in positions covered by the retirement system. This exclusion is not vitiated under the 1954 federal amend-

---

1. The parties have stipulated that Snell is personally ineligible for membership in the retirement system because he was over fifty years of age when he began driving the school bus. See La.Stat.Ann. 17:891, 892.

ment by the fact that the state-federal agreement adopts the Social Security Act "as such Act has been and may from time to time be amended," and excludes employees who are personally ineligible for the state system from social security coverage only under "applicable federal law." This is due to an additional provision in the 1954 amendment, found in 42 U.S.C. § 418(c) (4) (B), to the effect that persons who were excluded from social security coverage under state-federal agreements prior to 1954 may qualify for social security coverage only if the agreement is subsequently modified. Since the 1952 agreement has not been modified, its exclusion from social security coverage of employees personally ineligible for membership in the state retirement system is still effective under "applicable federal law." As a consequence, Snell may not avail himself of the 1954 addition to § 418(d) (1).

Thus, the issue presented for our determination is simply whether Mr. Snell performed services in a position covered by the state retirement system. If Snell's position was covered by the retirement system, the wages he earned as a school bus driver were correctly excluded from his social security account. We must necessarily look to the law of Louisiana to determine if Snell's position was covered by the Louisiana retirement system.

■ Before doing so, however, we must first consider plaintiff's request for a remand of this case to allow him to submit new and additional "evidence" to the Secretary. If the case is remanded, plaintiff intends to bring an action in state court against the proper Louisiana officials for a declaratory judgment determining whether or not he performed services in a position covered by the state retirement system. Should the state court hold that Snell's position was not covered by the retirement system, the plaintiff would then submit the declaratory judgment to the Secretary as additional "evidence" supporting his cause. In essence, the plaintiff is asking us to remand the case to the Secretary in order that a state court may decide the very issue which is presented for decision here; that is, whether or not Snell is in a position covered by a state retirement system. Defendant contends that we should not remand this case because such a judgment would not be binding upon it, and we could therefore resolve the issue anew. While we reject this contention,[2]

2. The defendant contends that such a judgment would not be binding upon it as it would not be, and could not be, a party to the action. This contention raises the issue of the "res judicata" effect of a court decision upon a subsequent administrative proceeding and embraces a vast expanse of uncertain jurisprudence. See 2 Davis, Administrative Law Treatise, § 18.11 (1958). However, the authorities upon which the government relies do not support its contention, and we conclude that if such a judgment were rendered, it would be binding upon this Court and the defendant in this case.

Brown & Bartlett v. United States, 330 F.2d 692 (6th Cir. 1964), cited by the government, is the nearest case factually to the case at bar. It does not hold, as defendant here argues, that state court decisions to which the government is not a party are not binding upon the government. This was not even an issue in that case. The issue there was whether, under the common law definition of "employee" adopted by the Social Security Act, certain school bus drivers were employees of the owners of a school bus line in Ohio. The latter argued that the bus drivers were not their employees because the Ohio Supreme Court had previously held that the bus drivers were state employees for the purpose of coverage under the state employees' retirement law. The court rejected this argument and held that for purposes of the social security law, the owners were the employers of the bus drivers under the common law test; and that such a decision was not prohibited by the fact that the state court, applying a different test, held that the bus drivers were employees of the state for state retirement purposes.

The other cases relied upon by the government also fail to sustain its contention. Marek v. Flemming, 192 F.Supp. 528 (S.D.Tex.1961), vacated and remanded on other grounds, 295 F.2d 691 (5th Cir.), held that a state probate court determination was not binding upon the government which was not a party to the probate proceeding. However, that de-

we deny plaintiff's request for a remand because, even though the state judgment would certainly be helpful to our decision herein, it does not constitute "evidence." It is, instead, a matter of law concerning statutory interpretation that the plaintiff wishes to submit. This is an improper reason for remand. And we are unaware of, nor does the plaintiff suggest, any other procedure under the instant circumstances whereby legal issues, the determination of which is the proper function of this Court, may be deferred to a proposed state court proceeding unless it be abstention. Perhaps the chief non-discretionary obstacle to this course of action, as well as the remand suggested by plaintiff, is that plaintiff would actually be unable to obtain a declaratory judgment in state court. The only question which plaintiff desires to have determined by the proposed declaratory judgment action is whether or not he is in a position covered by the state retirement system. However, Snell admits he is personally ineligible for membership in the state retirement system and does not state that he wishes to litigate that point in state court. Hence, a decision rendered by a Louisiana court as to whether or not his position is covered would only be an advisory opinion. It is well settled that the Uniform Declaratory Judgments Act, which Louisiana has embodied in the Code of Civil Procedure, Arts. 1871–1883, does not enable the courts to decide abstract and theoretical questions. The party seeking a declaratory judgment must present a justiciable controversy with truly adverse and not merely hypothetical or academic issues. Stoddard v. City of New Orleans, 246 La. 417, 165 So.2d 9 (1964); State v. Board of Supervisors, 228 La. 951, 84 So.2d 597 (1955); Tugwell v. Members of Board of Highways, 228 La. 662, 83 So. 2d 893 (1955). Consequently, we doubt that a Louisiana court would entertain a declaratory judgment action brought by Snell. For these reasons the plaintiff has failed to show "good cause" required by 42 U.S.C. § 405(g) for remand. The facts have been sufficiently developed to enable us to decide this case and a remand would only delay, unnecessarily, ultimate judicial decision.

We now turn to the law of Louisiana as it existed from 1960 to 1963, the period of disputed coverage, to determine the real issue in this case of whether or not Snell performed services in a position covered by the state retirement system.

The retirement system was established in 1946 "for the purpose of providing re-

---

cision is distinguishable in that it was bottomed upon the fact that the probate proceeding was *ex parte* and thus was not a real adversary proceeding. Nigro v. Hobby, 120 F.Supp. 16 (D.Neb.1954), and Miller v. Ribicoff, 198 F.Supp. 819 (E.D.Mich.1961), were both distinguished in two more recent cases. Collins v. Celebrezze, 250 F.Supp. 37 (S.D.N.Y.1966); Zeldman v. Celebrezze, 252 F.Supp. 167 (E.D.N.Y.1965).

In both *Collins* and *Zeldman* it was held that a prior state court judgment as to the validity of a mariage was binding upon the Secretary of Health, Education, and Welfare even though he was not a party to the prior action. The decisions rested on the fact that the Social Security Act, 42 U.S.C. § 416(h) (1) (A), referred the determination to state law. This crucial fact is also present in our case. The Social Security Act refers to "positions covered by a retirement system" and thus incorporates state law, which includes statutes and case law, as the fed-

eral criterion. Under these circumstances we feel that *Zeldman* states the correct principle at 171: "[W]hen a final judgment is rendered by a state court, and the *precise issue* there decided then arises in an action in the federal court, the former judgment is determinative of that issue for *all purposes*." (emphasis added). The proposed state court action would decide the precise issue presented for decision here and would thus be binding upon this Court and the defendant as the facts would be identical.

Further, the narrow question presented by this case is not a matter on which the Secretary has a particular expertise, nor does it involve considerations which Congress has explicitly entrusted to the Secretary for resolution. This case therefore lacks the peculiar factors which often warrant the abandonment of traditional notions related to the strict "res judicata" principle when administrative agencies are involved.

tirement allowances and other benefits * * * for school bus *operators*. * * employed in the state public school system." (emphasis added) Louisiana Acts of 1946, Act No. 124, § 1. A "member" of the retirement system was defined as "any school bus *driver* * * * included in the *membership* of the [retirement]system * * *." (emphasis added) Louisiana Acts of 1946, Act No. 124, § 2(n). The difficulty is that membership was available by 1960 only to "employees," La.Stat.Ann. 17:891–895, and "employee" was defined as "any * * * school bus *operator* * * * who is an employee of a parish or city school board of the State of Louisiana * * *." (emphasis added) Louisiana Acts of 1946, Act No. 124, § 2(k). Thus, there is an apparent inconsistency in the statutory language in that a bus "driver" could be a member of the retirement system, but membership, strangely, was available only to a bus "operator." The parties do not attach any real importance to this patent ambiguity, and our decision is not necessarily dependent upon resolving it. But in passing we note our feeling that the inconsistency is only an apparent one in that it results from an interchangeable use of the terms "driver" and "operator" as meaning one who drives—manually operates—a bus. The statute would otherwise be devoid of intelligible meaning. The statute was amended in 1965 for the expressed purpose of clarifying the law. The amendment substituted "school bus driver" for "school bus operator" in sections 1 and 2 (k) of the original act. Louisiana Acts of 1965, Act No. 79, §§ 1, 2(11). This did, indeed, clarify the law, and supports our position that the inconsistency was only apparent. However, even if the inconsistency was not apparent, but real, we would hold, in accord with the Louisiana Attorney General's interpretation of these provisons, Op.Atty.Gen., 1946–1948, p. 952, that the statute was meant to embrace a "school bus driver."

Since the statute does authorize coverage under the retirement system for school bus drivers, we must determine whether or not Snell was a school bus driver. Plaintiff contends that since he was paid only $900 a year, he was not a "driver" in the legal sense of the word because his compensation was less than the minimum statutory salary of $2400 a year provided for "drivers" from 1960 to 1963 by Louisiana Acts of 1956, Act No. 112, § 1, La.Stat.Ann. 17:496, as amended.[3] However, we feel that this argument must fail for two reasons.[4]

3. Snell also argues that he is not an "operator" within the legal sense of that term because La.Stat.Ann. 17:497 defines "operator" as one who owns and maintains his own school bus, which Snell does not (the bus is owned and maintained by the Ponchatoula Elementary School), and further, that he does not receive the additional benefits afforded "operators" under 17:497 and 17:500. This argument is mooted by our determination that membership is extended to "drivers" and that Snell is a "driver." Apart from the mootness, the contention fails on it merits. The argument that he is not an "operator" because he does not receive the salary and sick leave to which "operators" are entitled under sections 497 and 500 falls for the same reason that his similar argument with respect to his status as a "driver" falls, *infra*. His argument that he does not own and maintain his own bus, and thus is not within the meaning of "operator" as defined in § 497, is without merit because that section specifically states that the definition contained therein applies only to that particular sub-part of Part II.

4. The defendant contends that the reason sections 496, 497 and 500 do not apply to the plaintiff is because § 491 limits those provisions to employees "of any parish school board," and that Snell is not an employee of a parish school board, but is an employee of the Ponchatoula Elementary School. Assuming, *arguendo*, that § 491 limits those provisions as the government contends and that Snell is not an employee of a parish school board, the government wins its point but suffers the loss of the case. This is for the obvious reason that only employees "of a parish or city school board of the State of Louisiana" are covered by the retirement system. La.Stat.Ann. 17:882 (11).

However, the plaintiff admits that it would be unrealistic to argue that he is employed by the Ponchatoula Elementary

First, the statutory salary provision is found in Part II of the Chapter under Education relating to Teachers and Employees. Part II concerns Tenure and section 496 was first enacted in 1954. We are here concerned with Part VIII of that Chapter, and Part VIII relates to the retirement system which was enacted in 1946. We do not believe that the provisions of Part II, upon which plaintiff relies, control our consideration of Part VIII. Rather, we feel that as separate statutes enacted at different times for different purposes, they may be independently considered. Second, even if the provisions of Part II must govern our determination under Part VIII, the plaintiff's argument still fails. Merely because the statute entitles a bus driver to receive a certain salary and the driver does not receive that salary does not mean that he is not a bus driver. In commenting upon the meaning of the term "driver" as used in the statute, the Louisiana Attorney General stated that "the word 'driver' can only mean one who actually drives a vehicle * * *." Op. Atty.Gen., 1946–1948, pp. 952, 953. We agree. The plaintiff has not offered us a contrary definition of "driver," nor does the statute provide one. A statute which states that a driver shall receive a specified salary certainly does not constitute a definition. To hold that the plaintiff is not a driver solely because he does not receive the salary due him would be to abandon common sense, when, as here, there is absolutely nothing to indicate that the term has any meaning other than its ordinary meaning. Consequently, we feel that Snell was a school bus driver within the meaning of the Louisiana statutes involved.

However, this does not mean, and we do not hold, that Snell performed services in a position covered by the state retirement system. Quite the contrary, Snell's position is covered by the state retirement system in *theory* only. Although the state statutes offer a basis in the law for bringing school bus drivers within the retirement system, in *practice* they are not covered. This, we feel, is a crucial difference.

No deductions were made from the salary of any of the employees driving school buses owned by the Ponchatoula Elementary School, *even though most of them were personally eligible for membership in the state retirement system,* because their supervisor did not consider this position to be covered under the retirement system and did not think the bus drivers were members. These employees will not receive any state benefits upon retirement since this depends upon the accumulation of contributions to the employee's account in the retirement fund, La.Stat.Ann. 17:913, 895(2), and contributions are made by, and by the state on behalf of, only those employees who are thought to be members of the retirement system. La.Stat.Ann. 17:982, 984, 992, 993. Thus, regardless of the statutory provisions, the obvious fact re-

---

School and not by the parish school board. While we tend to agree with the plaintiff, the question of whether or not he was an employee of a parish or city school board is a question of fact upon which the hearing examiner's finding, "if supported by substantial evidence, shall be conclusive." The hearing examiner's opinion does not reveal his finding, if any, as to whether Snell was employed by a school board or by the school itself. Even though the finding that Snell was employed by a school board is implicit in the examiner's decision, we would have to remand the case for an explicit finding if it would affect the result herein because it is a basic fact, and there is no indication that the hearing examiner even considered it. 2 Davis, Administrative Law Treatise, § 16.07 (1958); but see Celebrezze v. Miller, 333 F.2d 29, 31 (5th Cir. 1964). However, our decision would be the same whether Snell was employed by the school board or by the school itself. If he was employed by the school itself, he qualifies for social security coverage because the statutory state retirement system does not cover employees in that position. Assuming, as we do, that he is employed by a parish or city school board, we conclude, *infra*, that he is still not in a position covered by the state retirement system, and he therefore qualifies for social security coverage.

mains that persons who are employed to drive buses owned by the Ponchatoula Elementary School will not receive any benefits from the state under the retirement system. For this reason, even though this position *should* be covered, we cannot, in all fairness state that this position *is* covered by the retirement system. The simple truth is that Snell does. *not* occupy a *position* covered, *in fact*, by a retirement system.

While the situation here is admittedly unique, our approach is not novel. It is only an application of the judicial maxim that the realities of the litigation govern. While the Louisiana statute may authorize the inclusion of the Ponchatoula Elementary School bus drivers in the retirement system, we are unable to ignore the true situation in this case; realities must guide our application of the Social Security Act. Hellberg v. Celebrezze, 245 F.Supp. 390 (W.D.Mo.1965). In reality Snell does not perform services in a position covered by a retirement system.

■■ Our decision is fully supported by the congressional policy leading to the enactment of the Social Security Act. The Act was obviously intended to soften the economic rigors of old-age when a man's earning power had been spent. With retirement funds available, a man can live his last years without fear of sheer economic want. To accomplish these purposes "[t]he language of the Act is * * * to be interpreted in favor of coverage." Delno v. Celebrezze, 347 F.2d 159, 162 (9th Cir. 1965). Our Circuit shares this attitude. Celebrezze v. Kilborn, 322 F.2d 166, 168 (5th Cir. 1963). The same spirit of liberality and extensive coverage, which prompted the original Act, led to the revision of § 418, our present concern, in 1954. 100 Cong. Rec. 7418–7468 (1954). Decisions implementing § 418 fortify the conclusion that this spirit was the dominating force motivating Congress to amend § 418. Brown & Bartlett v. United States, 330 F.2d 692, 696 (6th Cir. 1964); Osserman v. Gardner, 259 F.Supp. 368, 371 (S.D.N.Y.1966). It is clear that the judicial attitude is one of liberality favoring coverage in order to effectuate the congressional intent whenever there is a statutory basis for so doing. We feel that, apart from exclusions here irrelevant, the purpose of § 418 is to extend federal retirement benefits under a state-federal agreement to state employees who will not receive state retirement benefits. By merely refusing to blind ourselves to the real situation in this case, our decision, for which we have a clear statutory warrant, enables us to give effect to the congressional intent and the policy of the Act. This we are bound in law and conscience to do.

■ Consequently, we hold that as a bus driver for the Ponchatoula Elementary School, Snell did not perform services in a position covered by the state retirement system, and it was therefore improper to exclude the wages he earned as such from his social security account for that reason.

As a result of our decision, the State of Louisiana, to briefly indulge in speculation, should be requested to contribute the employer's share of F.I.C.A. taxes. See 20 C.F.R. §§ 404.1201–404.1290. If the state balks at making such payments, litigation may ensue between the state and the Secretary of HEW. While we certainly do not here purport to pass upon the merits of this speculative controversy, we fail to see, at this point, how our decision harms the state in any way. In voluntarily entering the state-federal agreement, Louisiana obviously attempted to provide for the old-age security of its employees by agreeing, in effect, either to provide retirement benefits to the bus drivers of the Ponchatoula Elementary School or to contribute to social security for the benefit of these employees. The agreement clearly contemplated that the bus drivers were to receive retirement benefits from one of two possible sources financed in part by state funds. Benevolent as the state's intentions were, it nevertheless entered into an enforceable bargain which it has thus far failed to perform. The result is merely that the state must now live up to its con-

tractual obligations. By doing so, it then enables these employees to enjoy retirement benefits which all concerned—the Congress, the state, and the bus drivers —had fully intended and expected to be available and for which the law provides.

For the foregoing reasons, the defendant's motion for summary judgment in its favor is hereby denied, and the plaintiff's motion for summary judgment in his favor is hereby granted. It is further ordered that the decision of the Secretary be, and hereby is, reversed. Whereupon it is further ordered that the Secretary be, and hereby is, directed to include the disputed wages in plaintiff's social security account.