Apolonia CRUZ, Plaintiff-Appellee,

v.

John W. GARDNER, Secretary of Health, Education and Welfare, Defendant-Appellant.

No. 15888.

United States Court of Appeals Seventh Circuit.

March 30, 1967.

James B. Brennan, U. S. Atty., Milwaukee, Wis., Alan S. Rosenthal, Norman Knopf, Attys., Dept. of Justice, Washington, D. C., Barefoot Sanders, Asst. Atty. Gen., for appellant.

Harvey L. McCormick, Milwaukee, Wis., for appellee.

Before HASTINGS, Chief Judge, and SCHNACKENBERG and KILEY, Circuit Judges.

HASTINGS, Chief Judge.

Apolonia Cruz commenced this action in the United States District Court for the Eastern District of Wisconsin, on behalf of five illegitimate children of the wage earner Silverio Baez, against the Secretary of Health, Education and Welfare pursuant to Section 205(g) of the Social Security Act, 42 U.S.C.A. § 405(g). She sought thereby to obtain judicial review of a final decision of the Secretary denying plaintiff's application for child's insurance benefits under Section 202(d) of the Act, 42 U.S.C.A. § 402(d).

The Secretary had denied the application upon finding that the illegitimate children failed to meet the statutory eligibility requirements.

The district court, holding that the Secretary had applied incorrect legal standards in determining eligibility, reversed the Secretary's decision, granted plaintiff's motion for summary judgment and denied the Secretary's cross motion for summary judgment. Judge Reynolds' decision is reported as Cruz v. Celebrezze, E.D.Wis., 255 F.Supp. 665 (1966). The Secretary has appealed this adverse decision. We reverse.

The facts are simple and undisputed.

The wage earner was legally married in Puerto Rico to Epifania Diaz in 1947.

One child, Hidalisa, was born of this marriage in 1948 and is living. The marriage was never dissolved. The existence of this undissolved marriage and the child born of it were known to plaintiff, as well as the wage earner, at all times material to this controversy.

Plaintiff and the wage earner came separately to Indiana from Puerto Rico in 1953. Shortly thereafter, they began living together and continued such relationship until his death on December 4, 1958. They had five children, the claimants on whose behalf plaintiff commenced this action. Four of the children were born between 1953 and 1958, and the fifth some four months after the wage earner's death.

The wage earner acknowledged publicly that the first four of such children were his children. There is no dispute that plaintiff and wage earner were the parents of all five children.

It is conceded that plaintiff and wage earner were never married and that he never took action *in a court* to recognize legally any of the children as his own.

In 1958, upon the death of the wage earner, plaintiff applied for survivor's insurance benefits on behalf of herself and the four children then born. Benefits were denied by the Bureau of Old Age and Survivors Insurance because of claimants' inability to satisfy the necessary legal requirements. No appeal was taken.

In 1959, the wage earner's lawful wife Epifania and the legitimate child of their marriage, Hidalisa, successfully applied for and began receiving survivor's insurance benefits.

In 1962, plaintiff unsuccessfully filed a second application on behalf of the five illegitimate children, the one now before us under review.

In 1964, prior to an administrative hearing on the second application, a petition was filed in the Superior Court of Lake County, Indiana for determination of heirship in the absence of general administration. Ten days before the administrative hearing, the Superior Court

of Lake County, Indiana issued an *ex parte* order reciting that Silverio Baez (wage earner) had died intestate and left as "his sole and only heirs" the five children on whose behalf plaintiff commenced this present action.

The petition to determine heirship filed by plaintiff on behalf of the five children and the *ex parte* order entered were plainly incorrect since the wage earner was survived by a widow and one legitimate child in Puerto Rico.

The district court and the Secretary both held that the test to determine the eligibility of the five illegitimate children to benefits was whether each of the children was a "child" within the meaning of Section 216(h) (2) (A) of the Act, 42 U.S.C.A. § 416(h) (2) (A), which reads:

> "(2) (A) In determining whether an applicant is the child or parent of a *fully or currently insured individual* for purposes of this subchapter, the Secretary shall apply such laws as would be applied in determining the devolution of intestate personal property * * * if such insured individual is dead, by the courts of the State in which he was domiciled at the time of his death * * *. Applicants who according to such law would have the same status relative to taking intestate personal property as a child or parent shall be deemed such."

█ Since the wage earner was found to be domiciled in Indiana at the time of his death, the law of Indiana is applicable to determine "the devolution of intestate personal property" and whether the illegitimate children would have the "same status relative to taking intestate personal property as a child."

The applicable Indiana law is Section 6–207(b), Burns' Indiana Statutes, which reads:

> "For the purpose of inheritance to, through and from an illegitimate child, such child shall be treated the same as

if he were the legitimate child of his father, if but only if (1) the paternity of such child has been established by law, during the father's lifetime; or (2) if the putative father marries the mother of the child and acknowledges the child to be his own."

It is clear that neither of the two foregoing statutory prerequisites were met. The paternity of the children was not "established by law" [1] during the wage earner's lifetime and, obviously, he did not marry the plaintiff.

The district court was in agreement generally with the foregoing meaning of Section 6–207(b). However, it held that the Secretary erred in limiting his own statutory test to the right of intestate succession under the state law. It concluded that the proper legal standard to determine if a person was a "child" was whether under *any* Indiana law the person would be entitled to a child's share of the deceased's intestate personal estate.

The district court found applicable the provisions of the Indiana Bastardy Act, Sections 3–624, 3–629, Burns' Indiana Statutes. We find this reliance is misplaced. This Act imposes an obligation upon a father to support his illegitimate child in his lifetime; his estate may be held liable for such support after his death. It has nothing to do with inheritance rights nor with the devolution of intestate personal property. In short, we find it wholly irrelevant to the standards imposed by Section 216(h) (2) (A), supra.

█ The district court found persuasive and binding on the Secretary the *ex parte* determination of heirship of the Superior Court of Lake County, Indiana. It held the Secretary could not summarily disregard this determination and try the issue de novo. We conclude the trial court erred in reaching this conclusion.

The state court procedure used in the Superior Court of Lake County, Indiana

---

1. It is well settled in Indiana that "established by law" means established in a court of law. Thacker v. Butler, 134 Ind. App. 376, 184 N.E.2d 894 (1962).

is set out in Section 6–606, Burns' Indiana Statutes, as follows:

"(d) The decree of the court [determining heirship] * * * shall be conclusive of the facts determined therein *on any interested person who has been notified personally or by mail* in accordance with the provisions of this code, subject to the right of appeal." (Italics added).

Subsection (a) provides as follows:

"* * *. Upon filing of the petition the court shall fix the time of hearing thereof, notice of which shall be given to all persons known or believed to have any interest in the estate or any part thereof *as heir or through an heir of the decedent.* In addition, notice by publication shall be given to all unknown heirs of the decedent." (Italics added).

Obviously, the Secretary does not fall within the purview of this statute. He is not a person who has any interest in the wage earner's estate "as heir or through an heir of decedent." He did not receive any notice of such proceeding, and need not have received notice. He was not a party to the proceeding and could not have been bound by any determination made therein.

This view is buttressed by the holdings in two recent federal district court cases construing the law of Indiana.

In Alger v. Celebrezze, 267 F.Supp. 51 (S.D. Ind., July 28, 1965), in a memorandum opinion by Judge S. Hugh Dillin, and in Schultz v. Celebrezze, 267 F.Supp. 880 (N.D.Ind., July 29, 1965), in a memorandum opinion by Judge George N. Beamer, the effect of similar *ex parte* state court orders is carefully considered and the holding in each case is that the Secretary need give it no effect. We agree. Patten v. Flemming, CCH Unemp. Ins. Rep., Fed. Transfer Binder, § 8985 at 4799–23 (D.Conn.1960); Miller v. Ribicoff, E.D.Mich., 198 F.Supp. 819 (1961); Martin v. Ribicoff, E.D.Tenn., 195 F. Supp. 761 (1961); Nigro v. Hobby, D. Neb., 120 F.Supp. 16 (1954).

■ Further, in *Alger* and *Schultz* the courts held that the Indiana law as set out in Burns' § 6–207, supra, is controlling in determining the rights of illegitimate children as to intestate property and is the proper criterion for determining whether a claimant is a "child" entitled to insurance benefits under the Social Security Act. In *Schultz* the district court found that the Indiana Bastardy Act was not relevant to a determination of this issue.

These two federal cases, decided by Indiana district judges applying Indiana law appear to us to be quite conclusive and lend full support to the Secretary's position in the instant case. We concur in those decisions.

In fairness to the district court in the instant case, it should be pointed out that these two applicable decisions were not officially reported, were not cited by the parties and obviously were not brought to the attention of the district court. They should have been. To us, at least, they are directly in point and quite conclusive.

Finally, although we note, as have other federal courts, that while cases such as the one before us often lead to harsh results, relief must be sought from the hands of Congress. Indeed, our attention has been called to an amendment of the requirements of Section 216(h) of the Act pertaining to a child's status.

■■ Section 339 of Public Law 89–97, July 30, 1965, § 216(h) (3) (C) (ii) of the Social Security Act, 42 U.S.C.A. § 416(h) (3) (C) (ii) (Supp. I, 1965), now provides to make eligible for benefits children of an insured wage earner who could not meet the previously established requirements.

Under the amendment an insured father's child would be considered a "child" within the meaning of the act if an insured father "is shown by evidence satisfactory to the Secretary to have been the father of the applicant, and such insured individual was living with or contributing to the support of the applicant at the time such insured individual died."

In response to an inquiry from the bench at oral argument in this case, we

have now been advised that on February 3, 1966, a new application for Social Security benefits was filed by plaintiff-appellee Cruz on behalf of her five illegitimate children. On May 12, 1966, the five children were administratively found to be eligible for benefits under the 1965 amendments and have been and now are receiving such benefits, retroactive to September, 1965.

Further, the only benefits remaining at issue under the unamended provisions of the Act are those from the date of the plaintiff's original application, February 7, 1962, to September, 1965. The 1965 amendments afford no relief for such part of the claim. Since the children currently are receiving benefits under the amended Act, no remandment to the Secretary is required.

For the foregoing reasons, the decision and judgment of the district court is reversed.

Reversed.