Jeanette GRAY, Plaintiff,

v.

Elliot L. RICHARDSON, Secretary of Health, Education and Welfare, Defendant.

Civ. No. C 68–374.

United States District Court, N. D. Ohio, E. D.

Feb. 28, 1972.

John L. Wolfe, Hershey, Browne, Wilson, Steel, Cook & Wolfe, Akron, Ohio, for plaintiff.

Robert R. Bauer, Asst. U. S. Atty., Cleveland, Ohio, for defendant.

MEMORANDUM AND ORDER RE:
CROSS-MOTIONS FOR SUM-
MARY JUDGMENT

KALBFLEISCH, Senior District Judge.

This is a suit under § 205 of the Social Security Act (42 U.S.C. § 405(g)) for judicial review of a final decision of the Secretary of Health, Education and Welfare. Both parties herein have moved for summary judgment.

On March 21, 1969, this Court remanded the case to the Secretary of Health, Education and Welfare for the taking of further evidence, to wit, the taking of further blood tests of both the wage earner, Freddy Gray, and his alleged daughter, Tamara Lynn Gray. (For additional facts, see the March 21, 1969 and May 14, 1969 memoranda and orders, copies of which are appended hereto.)

Pursuant to the remand order, the Secretary requested the wage earner to submit to another blood test, which he refused to do. The wage earner died on February 22, 1970.

In accord with the remand order, the Secretary reopened the case and held another hearing on March 24, 1971. After receiving certain new evidence, the Secretary reaffirmed his prior decision. This new evidence included: (1) a Release from Administration of the estate of Freddy Gray (Ex. No. 36), (2) the Record of Proceedings, Ohio Bureau of Workmen's Compensation, and (3) the testimony of a Dr. James E. Fleming, who gave his opinion on the medical evidence in the record.

The Release from Administration merely listed Tamara Lynn as the child of the deceased wage earner. Ohio Revised Code § 2113.03, on the application of an interested party and after publication, relieves an estate of less than $3,000 in assets from probate. However, in order to obtain this release, there was no contested proceeding on the paternity issue resulting in a specific factual finding as to Tamara Lynn's paternity. See the Court's memorandum and order of March 21, 1969.

Doctor Fleming, an internist and instructor at Case Western Reserve Medical School, testified that on the basis of the medical evidence in the record it was unlikely that the wage earner was the father of Tamara Lynn. He also stated that the blood typing of the wage earner and Tamara Lynn as it appears in the record was inadequate to make a determination about paternity. He also stated that if ejaculatory fluid was negative as demonstrated after the vasectomy performed in 1950 on the wage earner, it was impossible for Freddy to have fathered a child in 1962. (For a full analysis of the vasectomy evidence, see the March 21, 1969 memorandum and order.)

Section 216(h) (2) (A) of the Social Security Act (42 U.S.C. § 416(h) (2) (A)) provides:

"In determining whether an applicant is the child or parent of a fully or currently insured individual for purposes of this subchapter, the Secretary shall apply such law as would be applied in determining the devolution of intestate personal property by the courts of the State in which such insured individual is domiciled at the time such applicant files application, or, if such insured individual is dead, by the courts of the State in which he was domiciled at the time of his death, * * *. Applicants who according to such law would have the same status relative to taking intestate personal property as a child or parent shall be deemed such."

None of the documents—the order of the Common Pleas Court of Summit County, the Application for Release from Administration, the Record of Proceedings of the Ohio Bureau of Workmen's Compensation—listing Tamara Lynn as the child of the wage earner are the result of a proceeding that is "binding on the Secretary or on this Court for the purposes of determining whether Tamara Lynn Gray is the child of the wage earner and whether

Tamara Lynn Gray is entitled to child's benefits under 42 U.S.C. § 402(d)." (Memorandum and order of March 21, 1969.) See Dowell v. Gardner, 386 F.2d 809 (6th Cir. 1967); Cain v. Secretary of Health, Education and Welfare, 377 F.2d 55 (4th Cir. 1967); Cruz v. Gardner, 375 F.2d 453 (7th Cir. 1967); Old Kent Bank & Trust Company v. United States, 362 F.2d 444 (6th Cir. 1966); Schultz v. Celebrezze, 267 F.Supp. 880 (N.D.Ind.1967); also Ashley v. Ashley, 118 Ohio App. 155, 193 N.E.2d 535, 25 O.Op.2d 13, 15–16 (1962); and the memoranda and orders of March 21, 1969 and May 14, 1969. The Secretary is only bound by the decisions of state courts "if a state court has conducted a hearing to determine legitimacy and has made express findings under its state law." (Memorandum and order of March 21, 1969). There is no such decision herein from an Ohio court.

Of the three new cases cited by the plaintiff in her brief in support of her position that ex parte nonspecific orders are binding on the Secretary, two of the cases, Cruz v. Celebrezze, 255 F. Supp. 665 (E.D.Wis.1966), and Cain v. Gardner, 256 F.Supp. 155 (S.C.1966) were reversed on appeal (375 F.2d 453 (7th Cir. 1967), cert. denied 389 U.S. 886, 88 S.Ct. 160, 19 L.Ed.2d 184; and Cain v. Secretary of Health, Education and Welfare, 377 F.2d 55 (4th Cir. 1967).) As to the third case, Snell v. Gardner, Secretary of Health, Education and Welfare, 275 F.Supp. 645 (E.D.La. 1967), rev'd on other grounds 416 F.2d 840, the portion relied upon is dictum and does not support plaintiff's position in any way.

■ The Secretary's determination that Tamara Lynn is not the child of the wage earner is final if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is such evidence that a reasonable mind would accept to support a decision. King v. Finch, 313 F.Supp. 909, 911 (N.D.Ohio, E.D.1970); Howard v. Finch, Civil No. C 69–280 (N.D.Ohio, E.D., filed March 26, 1971).

■ In Ohio the law is clear that every child born during the existence of a lawful marriage is presumed by law to be legitimate; however, this presumption is not conclusive and can be rebutted by clear and convincing evidence that the husband could not be the father of the child. State ex rel. Walker v. Clark, 144 Ohio St. 305, 58 N.E.2d 773 (1944); State v. Carter, 175 Ohio St. 98, 191 N.E.2d 541 (1963); 7 Ohio Jur. 2d § 60; also Rose v. Rose, 16 Ohio App.2d 123, 242 N.E.2d 677 (1968); Quasion v. Friedman, 110 Ohio App. 166, 169 N.E.2d 28 (1959); McGhee v. McGhee, (App.) 64 N.E.2d 254, 45 Ohio Law Abst. 465 (1945); Ashley, supra.

In this case, through letters and answers to written questions, the Secretary had before him the substantially uncontradicted statements of one Dr. McCready, a Barberton urologist, that he performed a bilateral vasectomy on Freddy Gray for the purpose of making him sterile and that the ejaculatory fluid was negative when checked on December 27, 1950 and September 7, 1962 for spermatozoid. Plaintiff's attorney, although practically invited to do so, never deposed or subpoenaed Dr. McCready.

While a vasectomy is not a one hundred per cent foolproof operation, there is no competent evidence herein that would substantially discredit Dr. McCready's conclusion that Freddy was sterile. It is the rankest speculation on the record herein to suggest, as plaintiff's attorney did, that the wage earner on the aforementioned test dates gave Dr. McCready someone else's ejaculatory fluid to test. Dr. Fleming, in commenting on the evidence received from Dr. McCready, stated in effect that the likelihood of Freddy's fathering a child after 1950 was extremely slight. Of course, neither doctor did say, nor could he have said, that it was entirely beyond the realm of possibility that Freddy could not have been the father of Tamara Lynn.

■ This Court concludes that the Secretary's decision herein is supported

by substantial evidence. Thus, as there no longer appears to be any possibility of clearly and conclusively showing non-paternity, the Court holds that the decision of the Secretary after this Court's remand is supported by substantial evidence.

It is ordered that the defendant's motion for summary judgment is granted and that the decision of the Secretary of Health, Education and Welfare is affirmed and the complaint is dismissed.

APPENDIX

*MEMORANDUM AND ORDER OF MARCH 21, 1969 RE: CROSS-MOTIONS FOR SUMMARY JUDGMENT*

This is a suit under § 205(g) of the Social Security Act (42 U.S.C. § 405(g)) for judicial review of a final decision by the Secretary of Health, Education and Welfare.

The proceedings leading to the request for judicial review in this case are as follows: Freddy Gray, the individual on whose earnings record the benefits are claimed, filed an application for disability insurance benefits on January 22, 1962. A period of disability was established beginning November 4, 1960 and benefits were awarded effective June 1961. On December 28, 1962 plaintiff filed an application for child's benefits on behalf of Tamara Lynn Gray, a minor, under § 202(d) of the Act (42 U.S.C. § 402(d)). The application was denied because the Secretary found that Tamara Lynn was not the child of the wage earner. Plaintiff seeks reversal of that finding. Plaintiff and the Secretary have filed cross-motions for summary judgment.[1]

The parties are in agreement upon all but one critical fact. The plaintiff, Jeanette Gray, and the wage earner, Freddy Gray, were ceremonially married on August 27, 1960. Freddy had been married once previously in April of 1945; this marriage resulted in the birth of two children and ended in divorce in September of 1957. After Freddy's marriage to plaintiff the couple lived together in Barberton, Ohio, until they separated in January of 1961.

At the hearings before the Secretary, plaintiff testified that Freddy occasionally visited her during their separation and that he would stay with her for a period of two to three days and then he would leave. During one of the visits in late January or early February of 1962, plaintiff testified that she had sexual relations with the wage earner. She also testified that during this period of time she did not have relations with any other man.

In April of 1962 plaintiff discovered she was pregnant, and on November 24, 1962 Tamara Lynn Gray was born. Freddy refused to acknowledge the child as his and gave no financial support to plaintiff for the child. Plaintiff had hoped for a reconciliation with the wage earner but finally sued Freddy for divorce in Summit County Common Pleas Court on February 25, 1963. The divorce petition alleged that Freddy had been guilty of gross neglect of duty and that Tamara Lynn had been born as an issue of the marriage. On January 5, 1965 a hearing was held before Summit County Common Pleas Judge Claude V. D. Emmons on the divorce proceedings; several previous hearings had been postponed because of mysterious "heart attacks" Freddy would suffer when a hearing was about to commence. The

1. On December 28, 1962 plaintiff also filed for wife's insurance benefits under § 202(b) of the Act (42 U.S.C. § 402(b)). This application was also denied. 42 U.S.C. § 402(b) (1) (B) states that a wife is entitled to disability insurance benefits only if she has attained the age of 62 or has in her care a child entitled to a child's insurance benefit on the basis of the wages of her husband. Since plaintiff has not reached the age of 62, she is entitled to benefits for herself only if the Court reverses the Secretary's determination that Tamara Lynn is not the wage earner's child.

wage earner did not attend the hearing on January 5, 1965, but his attorney, Mr. George Hargreaves, was present. Mr. Hargreaves asked several questions of the plaintiff, and he may have advised the Court that Freddy was sterile but it is uncertain if any evidence in support of such an allegation was introduced. On January 15, 1965 Judge Emmons entered an order granting a divorce to plaintiff and declaring that "one child, Tamara Lynn Gray, has been born to the plaintiff during lawful wedlock as issue of said marriage."

Despite the finding by the Summit County Common Pleas Court that Tamara Lynn Gray was the child of the wage earner, the Secretary made a contrary finding with respect to this question because of certain evidence which led him to believe that Freddy could not have been the father of Tamara Lynn. On October 29, 1950 Dr. Robert G. McCready, M.D., a Barberton urologist, performed a bilateral vasectomy on Freddy for the purpose of making him sterile. In a letter written by Dr. McCready on September 7, 1962 he stated:

"I wish to make the following statement concerning Mr. Fred Gray of 1775 Toepher Rd., Akron 12:

"On October 29, 1950 I performed a bilateral Vasectomy on Mr. Gray for the purpose of sterility. On December 27, 1950 the ejaculatory fluid was checked and found to be negative for sperm.

"A repeat examination of the ejaculatory fluid was done today and was again found to be negative for sperm. Mr. Gray is sterile."

In reply to an inquiry by the Secretary in September of 1966, Dr. McCready further stated that Freddy's chances of fathering a child after such operation was performed on him were "practically nil."

Section 216(h) (2) (A) of the Act (42 U.S.C. § 416(h) (2) (A)) provides:

"In determining whether an applicant is the child or parent of a fully or currently insured individual for purposes of this subchapter, the Secretary shall apply such law as would be applied in determining the devolution of intestate personal property by the courts of the State in which such insured individual is domiciled at the time such applicant files application * * *."

Plaintiff, relying on the above section, argues that there is a valid state judgment determining the question of whether Tamara Lynn is the child of Freddy and that the Secretary "has no right to impeach or collaterally attack the judgment of the State of Ohio as to legitimacy." In support of her argument plaintiff relies on Collins v. Celebrezze, 250 F.Supp. 37, 41 (S.D.N.Y.1966) which holds:

"If, as here, the state courts have decided the issue the Secretary cannot summarily disregard that adjudication and proceed to re-decide de novo the issue of status."

Plaintiff also cites Zeldman v. Celebrezze, 252 F.Supp. 167, 171 (E.D.N.Y. 1965) which holds:

"If a state court has previously determined the very issue before the Secretary, then he should accept such determination as the law of the state."

There is no question that the Secretary must apply state law to determine questions of family status. 42 U.S.C. § 416(h). Accordingly, if a state court has conducted a hearing to determine legitimacy and has made express findings under its state law, the Secretary must refer to and apply the law of the state as determined by the court. In the instant case, however, there was no hearing in the state court on the question of whether Tamara Lynn Gray was the child of Freddy Gray. No evidence appears to have been taken on the subject and the fact that Freddy had been declared sterile by Dr. McCready was not brought before the court. Judge Emmons merely entered a decree of divorce and, incident thereto, entered a decree that Tamara Lynn was born as issue of

the marriage between plaintiff and the wage earner.

The decree entered by Judge Emmons is not binding on the Secretary or on this Court for the purposes of determining whether Tamara Lynn Gray is the child of the wage earner and whether Tamara Lynn Gray is entitled to child's benefits under 42 U.S.C. § 402(d). See Dowell v. Gardner, 386 F.2d 809 (6th Cir. 1967); Cruz v. Gardner, 375 F.2d 453 (7th Cir. 1967); Old Kent Bank and Trust Company v. United States, 362 F. 2d 444 (6th Cir. 1966); Schultz v. Celebrezze, 267 F.Supp. 880 (N.D.Ind.1967); Cain v. Secretary of Health, Education and Welfare, 377 F.2d 55 (4th Cir. 1967).

Plaintiff's claim that the reports of Dr. McCready should not have been incorporated into the record because plaintiff had no opportunity to cross-examine Dr. McCready is without merit. A review of the record of proceedings relating to plaintiff's claim reveals that plaintiff's attorney was afforded ample opportunity to depose Dr. McCready and was even invited by the hearing examiner to make arrangements to depose Dr. McCready. Plaintiff's attorney stated in a letter of September 10, 1967 to the hearing examiner (Tr. p. 130):

> "I know I am being difficult, but I do not wish to examine Dr. McCready or make arrangements for his deposition to be taken.

> \* \* \* \* \* \*

> "I must, therefore, respectfully decline your invitation to arrange for the deposition of Dr. McCready.

> "I sincerely feel that if I call Dr. McCready, I am making him my witness and that I am bound by his testimony."

The sole question remaining is whether the Secretary's determination that Tamara Lynn Gray is not the child of Freddy Gray, the wage earner, is supported by substantial evidence and is conclusive. In this regard, the scope of review within which this Court is to act is clearly defined by 42 U.S.C. § 405(g). The findings of the Secretary as to any facts are to be final if supported by substantial evidence. Mere disagreement on the part of the reviewing court with the Secretary's decision is insufficient to warrant reversal if, upon review of the record, it is shown that the Secretary relied upon substantial evidence in reaching his conclusions. See Lane v. Gardner, 374 P.2d 612 (6th Cir. 1967).

It is obvious from a review of the record that the Secretary relied greatly on the evidence of Freddy's sterility supplied by Dr. McCready. However, it is significant that Dr. McCready stated, in response to an inquiry by the Secretary that the chances of Freddy's fathering a child were "practically nil." Thus the Court is confronted with the duty of determining whether the "practically nil" statement lends sufficient support to the Secretary's decision to meet the substantial evidence test which would require an affirmance under 42 U.S.C. § 405(g).

Morally, historically, and judicially the courts have been committed to the proposition that the utmost caution should be exercised when the legitimacy of a child is in question. In deference to this standard of great care, the Court has concluded that this case should be remanded to the Secretary for the purpose of taking further evidence in the nature of blood tests or otherwise in order to aid in the determination of Tamara Lynn's legitimacy. Courts, on many occasions, have recognized the conclusive character of blood tests to establish non-paternity. Since it is possible that an analysis of blood samples of the plaintiff, Freddy, and Tamara Lynn may establish conclusively that Freddy is not the father of Tamara Lynn, this Court feels the taking of such tests is necessary in order to comply with the aforementioned standard.

Accordingly, it is ordered that the cross-motions for summary judgment are overruled and that the case is remanded to the Secretary for further proceedings consistent with this memorandum and order.

MEMORANDUM AND ORDER RE: PLAINTIFF'S MOTION TO AMEND THE COURT'S ORDER OF MARCH 21, 1969.

There is no question that, incident to the decree of divorce, Judge Emmons made a specific factual finding on the paternity of Tamara Lynn Gray. The law is clear, however, that even if Judge Emmons "had gone into the question of paternity at the divorce trial and this issue was adjudicated" it still would not be binding on the Secretary. The Secretary was not a party to the proceeding and he is entitled to make an independent determination of whether Tamara Lynn Gray is the child of the wage earner and, as such, whether Tamara Lynn Gray is entitled to child's benefits pursuant to 42 U.S.C., Section 402(d). See Dowell v. Gardner, 6 Cir., 386 F.2d 809; Old Kent Bank and Trust Company v. United States, 6 Cir., 362 F.2d 444; Cruz v. Gardner, 7 Cir., 375 F.2d 453; Schultz v. Celebrezze, D.C., 267 F.Supp. 880; Cain v. Secretary of Health, Education and Welfare, 4 Cir., 377 F.2d 55.

In determining whether Tamara Lynn Gray is the child of the wage earner, the Secretary is bound to apply the law of legitimacy as set forth by the highest court in the State of Ohio. The law in Ohio is clear. Every child conceived during the existence of a lawful marriage is presumed *by law* to be legitimate. But this presumption is not conclusive and it can be rebutted by clear, certain, and conclusive proof *that the husband had no powers of procreation.* State ex rel. Walker v. Clark, 144 Ohio St. 305, 58 N.E.2d 773; Harris v. Seabury, 30 Ohio App. 42, 164 N.E. 121.

Plaintiff's motion to amend is overruled.