**Dewan HULLUM, by his next friend Valerie WATSON, Plaintiff,**

v.

**Louis SULLIVAN, Secretary, Department of Health and Human Services, Defendant.**

No. 90 C 4311.

United States District Court, N.D. Illinois, E.D.

April 15, 1991.

Steven Coursey, Thomas Yates, Legal Assistance Foundation of Chicago, Chicago, Ill., for plaintiff.

Eileen M. Marutzky, Asst. U.S. Atty., Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Dewan Hullum ("Dewan"), by his next friend and mother Valerie Watson ("Watson"), brings this action to review the decision of Secretary of the Department of Health and Human Services Louis Sullivan ("Secretary") denying Dewan's application for surviving child's insurance benefits under one of the sections of the Social Security Act (the "Act"), 42 U.S.C. § 402(d)(1).[1] Dewan now moves for summary judgment under Fed.R.Civ.P. ("Rule") 56, and Secretary has both responded to that motion and filed his own motion for judgment on the pleadings.[2] For the reasons stated in this memorandum opinion and order, Dewan's motion is denied and Secretary's decision is upheld as a matter of law.

### Facts and Procedural History

Dewan was born out of wedlock in Milwaukee, Wisconsin on July 12, 1986. Dewan's mother Watson had lived there with Harry Hullum, Jr. ("Harry") since March 1984, and she continued to do so through October 1986. During that period Watson had two children by Harry—Devon and Dewan Hullum—and had sexual relations with no one other than Harry. Harry never disputed that he was Dewan's father and indeed acted like a father toward him. Harry's three sisters—Jewell Hullum ("Jewell"), Linda Hullum and Jeanette Walker—as well as Harry's mother Cue Lee Hullum and Watson's mother Lena Watson all heard Harry declare that he was Dewan's father. In addition, Harry and Watson lived with Jewell while Watson was pregnant with Dewan.

Harry and Watson were never married. Harry is not listed as the father on Dewan's birth certificate, nor did Harry ever acknowledge in writing that he was Dewan's father, nor was he ever decreed to be Dewan's father or ordered to pay child support to Dewan in a judicial proceeding.

---

1. All further citations to provisions of the Act will take the form "Section—," referring to the statutory numbering in Title 42 rather than to the Act's internal section numbering.

2. Rule 56 imposes on the summary judgment movant the burden of establishing the lack of a genuine issue of material fact (*Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986)). For that purpose this Court is "not required to draw every conceivable inference from the record—only those inferences that are reasonable" in the light most favorable to the nonmovant—in this case Secretary (*Bank Leumi Le–Israel, B.M. v. Lee*, 928 F.2d 232, 236 (7th Cir.1991) and cases cited there). Secretary labels his motion as one seeking judgment "on the pleadings" (see Rule 12(c)) on the premise that Section 405(g) makes Secretary's administrative record (the "AR") part of Secretary's answer in this action and hence a part of the pleadings. In all events, however, the facts are not in dispute in this case, so that only issues of law are left for decision. This case is therefore ripe for determination by this Court even though Secretary has filed his Rule 12(c) motion rather than the usual cross-motion for summary judgment and even though the decision reached in this opinion is adverse to Dewan.

Harry was declared dead on January 22, 1987, when Dewan was just over six months old. Harry had last been seen on November 22, 1986 by Jewell, with whom he was living at the time in Milwaukee. On January 22, 1987 his body washed ashore from Lake Michigan in Milwaukee, so that the cause of death was listed as fresh water drowning. Harry's obituary stated that "Harry was a devoted father" and listed his children as Devon and Dwane [sic] (then living in Chicago).

On July 13, 1987 Watson applied for and was denied child's insurance benefits on Dewan's behalf. Watson then filed a request for reconsideration, and on August 19, 1987 Secretary denied the request. Watson next requested an administrative hearing, and on March 3, 1988 Administrative Law Judge ("ALJ") Edward Bobrick (now a Magistrate Judge of this District Court) issued a decision denying her application. Watson then sought review of the decision by the Appeals Council, and on July 18, 1988 the Appeals Council vacated the decision because it could not locate a copy of the hearing tape and remanded the claim for a new administrative hearing. After a new hearing ALJ Bobrick issued a new decision on April 27, 1989 denying Watson's application. Watson again sought review, and on May 31, 1990 the Appeals Council denied the request and adopted the ALJ's decision as Secretary's final decision.[3]

### Standard of Review

■ Section 405(g) provides that in any review of Secretary's decision:

[t]he findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive....

"Substantial evidence" is that which "a reasonable mind might accept as adequate to support [the] conclusion" (*Taylor v. Schweiker*, 739 F.2d 1240, 1241 (7th Cir. 1984), quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971)—the decision almost in-

variably cited for that proposition in the Social Security cases). Secretary's conclusions of law, however, are not entitled to the same deference—any errors of law must of course be reversed (*Schaefer v. Heckler*, 792 F.2d 81, 84 (7th Cir.1986)).

### Eligibility Criteria Under the Act

■ Any unmarried child of a deceased wage earner who died fully or currently insured can receive child's benefits if he or she is considered a "child" of the wage earner and was "dependent" on the wage earner at the time of the wage earner's death (Section 402(d)(1)). "Child" status can be shown by a child born out of wedlock in several ways under the Act. However, Dewan contends that he qualifies for benefits in only one of those ways—under Section 416(h)(2)(A), which states in relevant part:

In determining whether the applicant is the child ... of a fully or currently insured individual for purposes of this subchapter, the Secretary shall apply such law as would be applied in determining the devolution of intestate personal property ..., if such insured individual is dead, by the courts of the State in which he was domiciled at the time of his death.... Applicants who according to such law would have the same status relative to taking intestate personal property as a child ... shall be deemed such.

Any applicant who is able to show "child" status under Section 416(h)(2)(A) is deemed "dependent" as well and is thus eligible for child's insurance benefits under Section 402(d)(1) (*Mathews v. Lucas*, 427 U.S. 495, 499 n. 2, 96 S.Ct. 2755, 2759 n. 2, 49 L.Ed.2d 651 (1976)).

Harry was domiciled in Wisconsin at the time of his death. Therefore Secretary properly looked to that state's intestate succession laws to determine whether Dewan would have been eligible to inherit from Harry. Wisconsin intestate succession law provides in relevant part (Wis.

---

**3.** Portions of the ALJ's April 27, 1989 decision will be cited according to its AR page numbers as "AR—."

Stat.Ann. § 852.05(1) ("Section 852.-05(1)" [4]):

> A nonmarital child or the child's issue is entitled to take in the same manner as a marital child by intestate succession from and through his or her mother, and from or through his or her father if the father has either been adjudicated to be the father in a paternity proceeding under ch. 767, or has admitted in open court that he is the father, or has acknowledged himself to be the father in writing signed by him.

Dewan acknowledges that Harry never admitted his paternity in open court or in writing and that there has never been an adjudication of paternity.

### Secretary's Decision

By a straightforward application of Section 852.05(1), the ALJ logically concluded that Dewan did not meet any of its three eligibility criteria for inheriting intestate personal property from Harry and therefore was not entitled to child's insurance benefits under Section 416(h)(2)(A). Dewan argued before the ALJ and argues again here that the Act's incorporation of state intestate succession laws signifies that the *ALJ* must stand in the shoes of a Wisconsin state court and make his own determination of paternity according to the procedures and burdens of proof outlined in chapter 767 of the Wisconsin statutes—the provision referred to in Section 852.05(1)—and that chapter 767 allows for posthumous paternity proceedings.

ALJ Bobrick disagreed with Dewan's first premise, however (AR 34):

> Under Section [416](h)(2)(A) of the Act, the administrative law judge is directed only to consider and apply the intestacy law of the State of Wisconsin as the courts would apply them. There is a distinction between determining inheritance rights under State law and making a declaratory determination of paternity.... The administrative law judge is limited by the statutory test set forth in

Section 852.05(1) under Section [416](h)(2)(A) of the Act, and cannot extend the inquiry to also conducting posthumous paternity actions under separate and distinct chapters of the Wisconsin Statutes. If counsel for the child believes that a paternity action posthumously could be properly commenced at this time, and that it would result in judgment favorable to the child, it is suggested that he resort to the Wisconsin courts for such a decision.

Although the ALJ did not directly determine whether posthumous paternity actions were permitted by chapter 767, he did go on to decide that even if posthumous proceedings were not permitted by the statute, that would not render the statute unconstitutional.

### Secretary's Statutory Responsibility

■ This Court agrees with the ALJ that once it is determined that none of the three possible declarations of paternity under Section 852.05(1) was made in this case, Secretary may not go further. That conclusion stems from both a literal and a common sense reading of the Act and the Wisconsin intestacy statute.

Section 416(h)(2)(A) commands Secretary to apply Section 852.05(1) to determine eligibility, and the only potentially available alternative under that section for finding eligibility is if the "father has ... been adjudicated to be the father in a paternity proceeding under ch. 767." As a matter of plain English, the phrase *"has been* adjudicated" (in contrast with "is adjudicated") clearly contemplates that a determination of paternity has already been made at that point. And again as a matter of plain English, "a paternity proceeding under ch. 767" by definition involves all of the relevant trappings of chapter 767, one of those being section 767.01—which gives the Wisconsin circuit courts jurisdiction over all actions affecting the family. There is no statutory provision by which Congress (or, for that matter, the Wisconsin legisla-

---

**4.** Although the "Section—" usage is thus employed in this opinion to refer to totally separate statutory provisions, some with a federal source and some under state law, there should be no possible confusion because of the total difference in section numbering of those statutes.

ture—if it could do so) has authorized Secretary to conduct paternity proceedings where a state court could not itself do so. Surely that type of supercourt status for Secretary was not contemplated by the Act, which simply calls on Secretary to act as a state court in applying *intestacy* law and, in so doing, does not permit Secretary to make factual determinations of paternity not authorized for the state court itself.

Dewan seeks to call to his aid our Court of Appeals' decision in *Parker v. Sullivan*, 898 F.2d 578 (7th Cir.1990). But ironically the reasoning of that decision, when coupled with the important difference between the provision of the Act at issue there and Section 416(h)(2)(A)—the provision at issue in this case—points in the opposite direction from the one urged by Dewan.

In *Parker* the Act provision being construed there said that an applicant is a "widow" if the state courts "would find" that the applicant and the putative husband were married at the time of his death. *Parker* held that wording called for a *prediction* by Secretary of what the state courts would do, rather than expressing a mandate for the applicant to go to the state courts for that purpose in the first instance. According to Dewan, *Parker* teaches that Secretary should make just such a prediction about paternity. But it takes only a brief review of the statutory language and a common-sense reading and application of that language to see why that is not so at all.

Section 416(h)(2)(A) does parallel the provision at issue in *Parker* in one way that is *not* relevant here: It does call upon Secretary to "apply such law as *would be applied* in determining the devolution of intestate personal property ... *by the courts of the State* in which [the insured individual] was domiciled at the time of his

death ..." (emphasis added). That reference to what law the Wisconsin state courts "would" apply necessarily compels a reference to the manner in which the Wisconsin legislature has defined what that state's courts would be authorized to do— a Wisconsin state court would be free to make an *intestacy* determination that someone was a decedent's "child" if any of the three statutory bases for such a finding were present, and under the teaching of *Parker* Secretary would be free to make that identical determination without sending the putative child to the state court for that purpose. But what Section 852.05(1) also tells us is that there is no authority for a state court to convert such an intestacy hearing into a paternity hearing (as contrasted with reflecting the result of a previously-adjudicated paternity hearing)—and neither, then, may Secretary do so.[5]

Dewan furthermore argues (citing *Cruz v. Gardner*, 375 F.2d 453, 456 (7th Cir. 1967)) that it would be fruitless to require him to go to a Wisconsin state court to get a determination of paternity because Secretary is not bound by state court orders to which he was not a party. But even apart from the unavailability of such a posthumous paternity proceeding under Section 852.05(1),[6] that contention is really a red herring. It will be remembered that the Wisconsin statute permits three ways for a child's intestate succession from a father:

1. an admission by the father in open court,

2. a written acknowledgement of fatherhood or

3. prior adjudication in a paternity proceeding.

And Section 416(h)(2)(A) specifically makes *each* of those state law methods binding on Secretary. *Cruz*, announced in a wholly

---

**5.** Accord, *Bennemon v. Sullivan*, 914 F.2d 987, 992 (7th Cir.1990) (citation omitted), where our Court of Appeals agreed that the showing of paternity that had to be made under Section 852.05(1) to qualify for child's benefits under Section 416(h)(2)(A) involved "following a specific state-law procedure, as opposed to merely satisfying a substantive criterion of state law, mak[ing] unavailable the simple and direct route—administrative determination by the So-

cial Security Administration itself, without forcing the applicant to go through a state court proceeding—for determining eligibility suggested in a parallel context in *Parker v. Sullivan*, 898 F.2d 578 (7th Cir.1990)."

**6.** That unavailability is discussed next in this opinion.

different context, cannot override the express will of Congress.

■ As suggested in the last paragraph, however, Dewan's argument is purely hypothetical anyway—for Wisconsin case law teaches that statutory chapter 767 (the provisions of which are incorporated by Section 852.05(1))[7] does not permit the bringing of a paternity action now that Harry is dead. Dewan contends otherwise, pointing to Section 767.01(3) (emphasis added):

> An action under s. 767.45 may be brought in the county in which the child or the alleged father resides or is found or, *if the father is deceased,* in which proceedings for probate of his estate have been or could be commenced.

But here is all that Section 767.45 says:

> (1) The following persons may bring an action for the purpose of determining the paternity of a child or for the purpose of rebutting the presumption of paternity under s. 891.41:
>
> (a) The child.
>
> (b) The child's natural mother.
>
> (c) A man presumed to be the child's father under s. 891.39.
>
> (d) A man alleged or alleging himself to be the father of the child.
>
> (e) The personal representative of a person specified under pars. (a) to (d) if that person has died.

Our Court of Appeals has in two dicta assumed that those provisions allow for posthumous paternity actions in Wisconsin (see *Bennemon,* 914 F.2d at 992; *Schaefer,* 792 F.2d at 83). But that is not really what Sections 767.01 and 767.45 speak to. Instead, because Harry is dead, those provisions literally permit *his* personal representative to *bring* a paternity proceeding. That of course is not in issue here, and

none of the remaining discussion bears on that possibility. Most importantly for present purposes, however, this Court is not free to reach the result assumed in *Bennemon* and *Schaefer,* for the last—and definitive—word out of the Wisconsin state courts is otherwise.

*In re Paternity of N.L.B.,* 140 Wis.2d 400, 411 N.W.2d 144, 145 (Ct.App.1987) (emphasis in original), *appeal dismissed* 140 Wis.2d 875, 416 N.W.2d 67 (Wis.1987), gave those two statutory provisions a far more limited and quite literal reading:

> Section 767.01, Stats., merely grants jurisdiction over paternity actions to the circuit courts and limits the counties in which venue will lie. Section 767.45, Stats., simply establishes who may *bring* a paternity action, not who may be made a respondent in the proceeding.

Having done so, *N.L.B.* went on to hold that Section 895.01 of the Wisconsin Statutes (and not Sections 767.01 and 767.45) specifically controlled whether a paternity action survived and that in 1981 the Wisconsin legislature did not choose to amend that section as well to include paternity actions among the list of actions that do survive the putative father's death. *N.L.B.* also drew a negative inference to the same effect from the fact that Section 767.50 expressly provided for paternity actions if the *mother* dies, but "No comparable statute exists for the putative father" (*id.* at 146, 416 N.W.2d 67). As a consequence *N.L.B.* held squarely that chapter 767 did *not* permit paternity actions to be brought posthumously—that is, after the death of the father sought to be charged with having fathered the child.

■ That really ends the matter. Wisconsin law is what the Wisconsin courts say it is and·not what this or any other federal court may have said.[8] And under

---

**7.** Chapter 767 was enacted in 1981 and incorporated by reference into Section 852.05(1) in that same year. Before that it was clear that posthumous paternity actions were not permitted in Wisconsin (*In re Estate of Blumreich,* 84 Wis.2d 545, 267 N.W.2d 870 (1978), *appeal dismissed sub nom. Caldwell v. Kaquatosh,* 439 U.S. 1061, 99 S.Ct. 822, 59 L.Ed.2d 26 (1979)).

**8.** See, e.g., the discussion in *Van Dorn Co. v. Future Chemical & Oil Corp.,* 753 F.2d 565, 570–

71 (7th Cir.1985), abandoning any reliance on the earlier Seventh Circuit formulation and applications of the piercing-the-corporate-veil doctrine in favor of "look[ing] to the Illinois decisions for governing state law" (*id.* at 571). And that approach is doubly appropriate where, as appears to have been the case here, the federal dictum looking in the opposite direction from

Wisconsin law an appellate court's construction of a statute becomes just as much a part of the statute as if the legislature had specifically enacted it (*Cole v. Young*, 817 F.2d 412, 416 (7th Cir.1987), citing *Champlin v. State*, 84 Wis.2d 621, 267 N.W.2d 295 (1987) and *State ex rel. Klinger & Schilling v. Baird*, 56 Wis.2d 460, 202 N.W.2d 31 (1972)). Nor does this case pose any *Erie v. Tompkins*-type question as to the binding effect of an intermediate state appellate court decision (as contrasted with attempting to predict what the Wisconsin Supreme Court might do), given the Wisconsin statutory law that an officially published opinion of the Wisconsin Court of Appeals has statewide precedential effect (Wis.Stat.Ann. § 752.41(2)). Indeed, *Cole*, 817 F.2d at 416 spoke in precisely those terms of the binding effect on the federal courts of the state law rules as to the effect of Wisconsin Court of Appeals' decisions.[9]

■ Dewan tries to escape that conclusive impact of *N.L.B.* by urging that if he, an illegitimate child, is indeed barred from inheriting intestate property because paternity was not adjudicated before his father's death, that constitutes a violation of equal protection so as to render unconstitutional the state law and the Act as thus applied to him. But that final effort on his part is scotched by decisions from the Supreme Court and our Court of Appeals.

First of all, *Lalli v. Lalli*, 439 U.S. 259, 99 S.Ct. 518, 58 L.Ed.2d 503 (1978) has upheld as constitutional a New York statute that required an illegitimate child to obtain a court order of paternity during the lifetime of his father in order to inherit from his father by intestate succession. Classifications based on illegitimacy are valid under the Fourteenth Amendment if they are "substantially related to permissible state interests" (*id.* at 265, 99 S.Ct. at 523). On that score *Lalli, id.* at 271, 99

S.Ct. at 526 held that providing for the just and orderly disposition of property at death was the state interest at issue, so that a requirement that the putative father be alive contributed to the reliability of the fact-finding process. Although there might be cases (perhaps such as the one here) where the application of that statute would appear unfair because the child would be able to establish his filial relationship without disrupting the administration of his father's assets, the Court said (*id.* at 273, 99 S.Ct. at 527):

> [F]ew statutory classifications are entirely free from the criticism that they sometimes produce inequitable results. Our inquiry under the Equal Protection Clause does not focus on the abstract "fairness" of a state law, but on whether the statute's relation to the state interests it is intended to promote is so tenuous that it lacks the rationality contemplated by the Fourteenth Amendment.

As a result *Lalli, id.* determined that a statutory requirement that an adjudication of paternity be secured during the father's lifetime does not "inevitably disqualif[y] an unnecessarily large number of children born out of wedlock." That was held to distinguish the statute at issue there from the Illinois statute that had been struck down in *Trimble v. Gordon*, 430 U.S. 762, 97 S.Ct. 1459, 52 L.Ed.2d 31 (1976)—a statute that allowed an illegitimate child to inherit in intestacy from his or her father only if his or her parents were later married, thus irrationally disinheriting a vast number of illegitimate children without regard to alternative methods of establishing legitimacy. *Lalli*, then, closes down the avenue of attack that Wisconsin's intestate succession law is unconstitutional.

As for Dewan's attack on the intestacy statute *as part of the Act*, it fails in light of *Trammell v. Bowen*, 819 F.2d 167 (7th

state case law was uttered without that Wisconsin case law having been brought to the federal court's attention. This Court must assume that to have been the case when our Court of Appeals decided *Bennemon* after *N.L.B.* and merely cited to *Schaefer*, a pre-*N.L.B.* decision by the Court of Appeals itself, for the proposition that

chapter 767 allowed for posthumous paternity actions.

9. That obviates any need to debate the issue, as is the case under Illinois law (see, e.g., this Court's decision in *Rizzo v. Means Services, Inc.*, 632 F.Supp. 1115, 1131–33 (N.D.Ill.1986)).

Cir.1987). *Trammell* upheld the constitutionality of Section 416(h)(3)(C)(i)(II), which provides that "child" status can be shown by a court decree declaring paternity only *if* that decree had been obtained before the death of the father. Here is what *Trammell, id.* at 170 said:

> If there were no ground for believing that orders obtained before the father's death are different from later orders, then the rule would be like a roulette wheel—and the parties assume for current purposes that a system handing out benefits based on chance or whim would be forbidden.... But there is a difference. Orders obtained during the supposed father's life are more likely to be accurate because, if the child names the wrong person, he is apt to encounter resistance. The judicial declaration of paternity could be the basis of a later order requiring the father to support his child; one who is not actually the father is inclined to balk, and some real fathers also will endeavor to evade responsibility. A proceeding after the father's death is ex parte or nearly so.... To conclude that § 416(h)(3)(C)(i)(II) is constitutional, we need only believe that contested adjudications are more likely to be accurate than ex parte orders.

That analysis might well have been written in support of the decision in *N.L.B.* It speaks to the very concerns advanced by Dewan as to the claimed irrationality and unfairness of the Wisconsin statute and of its requirement of a lifetime paternity proceeding.

It should be remembered that the Supreme Court has already upheld the Act's framework as a whole in *Lucas.* That being so, *Trammell,* 819 F.2d at 170 instructs that a provision (here, via the Wisconsin intestacy laws) that a showing of paternity must be made during the lifetime of the father, "as one small part of a complex and generally sensible system, could be unconstitutional only if irrational." Under the Act's system, a showing of eligibility to inherit property under intestacy law is only one of at least seven routes Dewan had available to show "child" status (see *id.* at 168)—and in this instance he had

three more ways under Section 852.05(1) to show "child" status for the purpose of intestate succession, of which a paternity proceeding was only one.

Not to allow Dewan a posthumous paternity proceeding cannot be said to be irrational in light of the constitutional framework of the Act as a whole. Nor can it be said to be unconstitutional in any case in light of *Lalli* and *Trammell.* It has produced a distressing result for Dewan, but that unfortunately does not make a rational statute irrational.

### *Conclusion*

Because no genuine issue of material fact exists as to Secretary's denial of Dewan's application for child's insurance benefits under Section 416(h)(2)(A), Secretary is entitled to a judgment upholding his decision as a matter of law. This action is dismissed in its entirety.